UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICIA THOMPSON, on behalf of herself and all others similarly situated,<br><br>                              Plaintiff,<br><br>    - against -<br><br>REAL ESTATE MORTGAGE NETWORK, INC., SECURITY ATLANTIC MORTGAGE COMPANY, INC., NOEL CHAPMAN, an Individual and SAMUEL LAMPARELLO, an Individual,<br><br>                              Defendants. | Civil Action No. 11-CV-01494 (DMC-JAD)<br><br>**AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Patricia Thompson ("plaintiff") individually and on behalf of all others similarly situated, through their undersigned attorneys, for their Class and Collective Action Complaint against defendants Real Estate Mortgage Network, Inc. ("REMN"), Security Atlantic Mortgage Company, Inc. ("SAMC"), Noel Chapman and Samuel Lamparello (collectively the "defendants") alleges upon actual knowledge as to herself and, as to all other matters, alleges upon information and belief, as follows:

## NATURE OF ACTION

1.      This class action arises out of defendants' pervasive and repeated disregard of federal and New Jersey state labor laws during the course of plaintiff's employment as an underwriter for the defendants. Plaintiff brings this action pursuant to the federal Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, *et seq.,* and the New Jersey State Wage and Hour Law, N.J.S.A. §34:11-56a, *et seq.* (the "NJWHL"), for defendants' misclassification of underwriters, closers, and HUD reviewers and failure to pay them all wages due. Plaintiff seeks

damages on her own behalf and on behalf of all others in the preceding similarly situated job classifications.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and the FLSA, 29 U.S.C. § 216(b). Plaintiff's state law claims are interposed in accordance with the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), as the defendant REMN has corporate headquarters in this district in Bergen County, New Jersey where a substantial portion of the events giving rise to this action occurred.

4. The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

5. Plaintiff Patricia Thompson is a resident of New Jersey. She was employed according to her paychecks by SAMC as an underwriter from June 8, 2009 to February 2010 and by REMN as an underwriter from February 2010 to August 5, 2010.

6. From June 8, 2009 to February 2010, SAMC suffered or permitted plaintiff to work in exchange for wages. During this period, and at all relevant times, plaintiff and those similarly situated had an employment relationship with, and were employees of, SAMC within the meaning of the FLSA, 29 U.S.C.§203(e)(1), (g) and N.J.S.A. 34:11-56a1(f), (g) and (h).

7. From February 2010 to August 5, 2010, REMN suffered or permitted plaintiff to work in exchange for wages. During this period, and at all relevant times, plaintiff and those similarly situated had an employment relationship with, and were employees of, REMN within the meaning of the FLSA, 29 U.S.C. §203(e)(1), (g) and N.J.S.A. 34:11-56a1(f), (g) and (h).

8.     Plaintiff has consented to be a party to the FLSA claims in the action pursuant to 29 U.S.C. §216(b). Her written consent is attached.

9.     REMN, a New Jersey corporation, has been at all relevant times a nationwide direct mortgage lender headquartered at 70 Grand Ave., River Edge, New Jersey 07661, in the County of Bergen. At all relevant times REMN has maintained its Northern Operations Center at 499 Thornall Street, Edison, New Jersey 08837 and its Southern Operations Center at 175 Town Park Drive, Kennesaw, Georgia 30144.

10.    REMN has been at all relevant times an employer and/or joint employer engaged in interstate commerce and/or the production of goods for commerce with a gross revenue in excess of $500,000, within the meaning of the FLSA, 29 U.S.C. §203(a), (d), (r) and (s)(1)(A).

11.    REMN has been at all relevant times an employer and/or joint employer within the meaning of the NJWHL 34:11-56al(g).

12.    SAMC, a New Jersey corporation, has been at all relevant times a nationwide direct mortgage lender headquartered at 499 Thornall Street, Edison, New Jersey 07756.

13.    SAMC has been at all relevant times an employer and/or joint employer engaged in interstate commerce and/or the production of goods for commerce with a gross revenue in excess of $500,000, within the meaning of the FLSA, 29 U.S.C. §203(a), (d), (r) and (s)(1)(A).

14.    SAMC has been at all relevant times an employer and/or joint employer within the meaning of the NJWHL 34:11-56al(g).

15.    At all relevant times including from June 8, 2009 until August 5, 2010, a) plaintiff and those similarly situated performed work which simultaneously benefitted REMN, SAMC, Chapman and Lamparello; b) REMN, SAMC, Chapman and Lamparello acted directly or indirectly as employers in the interest of each other in relation to plaintiff and those similarly

situated; c) REMN, SAMC, Chapman and Lamparello shared direct or indirect control of the terms and conditions of employment and labor relations policies and practices of plaintiff and those similarly situated.

16. At all relevant times including from June 8, 2009 until August 5, 2010, REMN, SAMC, Chapman and Lamparello have been, within the meaning of the FLSA and NJWHL, joint employers of plaintiff and those similarly situated and, therefore, they are each jointly and severally liable for the violations of the FLSA and NJWHL.

17. Defendant Chapman is a resident of New Jersey and has been at all relevant times the co-owner and Executive Vice President and officer of SAMC. In 2011, Chapman became an Executive Vice President of REMN.

18. At all relevant times Chapman has acted directly or indirectly in the interest of SAMC and REMN in relation to plaintiff and those similarly situated, and has been an employer and/or joint employer of the plaintiff and those similarly situated within the meaning of the FLSA.

19. At all relevant times, Chapman has acted directly or indirectly in the interest of SAMC and REMN in relation to plaintiff and those similarly situated, and has been an employer and/or joint employer of the plaintiff and those similarly situated within the meaning of the NJWHL.

20. Chapman's actions on behalf of REMN are highlighted by a July 1, 2010, email that he sent to "All Departments" stating, in part, "So many of you worked long hours, late nights and even weekends to make sure that all REMN customers are happy customers."

21. Chapman is personally, jointly and severally liable for the violations of the FLSA and the NJWHL by SAMC and REMN.

22. Defendant Lamparello is a resident of New Jersey and has been at all relevant times the co-owner and President of SAMC. In 2011, Lamparello became an officer of REMN.

23. At all relevant times Lamparello has acted directly or indirectly in the interest of SAMC and REMN in relation to plaintiff and those similarly situated, and has been an employer and/or joint employer of the plaintiff and those similarly situated within the meaning of the FLSA.

24. At all relevant times, Lamparello has acted directly or indirectly in the interest of SAMC and REMN in relation to plaintiff and those similarly situated, and has been an employer and/or joint employer of the plaintiff and those similarly situated within the meaning of the NJWHL.

25. Lamparello is personally, jointly and severally liable for the violations of the FLSA and the NJWHL by SAMC and REMN.

26. At all relevant times including from June 8, 2009 until August 5, 2010, Chapman and Lamparello made decisions concerning SAMC's and REMN's day-to-day operations, hiring, firing, promotions, personnel matters, work schedules, pay policies, and compensation. When an issue arose regarding work or personnel matters at SAMC or REMN concerning the plaintiff that her immediate supervisor could not address alone, the supervisor would consult with, among others, Chapman or Lamparello.

27. On June 8, 2009, plaintiff was hired as an underwriter by what she thought was SAMC. However, after she was hired, plaintiff was assigned to a training class led by Pam Siefert, Director of Training for REMN. Siefert represented that REMN was a sister company of SAMC.

28. When plaintiff was hired, the top of her paystub read Security Atlantic Mortgage Co. In or about February 2010, the top of plaintiff's paystub changed to Real Estate Mortgage Network Inc. However, at the same time that plaintiff was receiving a paystub that read Real Estate Mortgage Network Inc. some of plaintiff's co-workers, who also were underwriters, continued to receive paystubs that still read Security Atlantic Mortgage Co.

29. When plaintiff's paystubs changed from SAMC to REMN, plaintiff understood that this change was in response to an investigation being conducted by the U.S. Department of Housing and Urban Development ("HUD") into SAMC's mortgage practices and that REMN would be the "face" of SAMC in the mortgage market. Though the public "face" of SAMC changed from SAMC to REMN, plaintiff's company email address did not change and it remained the same throughout her employment. Concurrent with the change from SAMC to REMN, the company had plaintiff and its other employees fill out new job applications under the name REMN. Plaintiff and her colleagues continued to do the same work at the same desks at the same location (499 Thornall Street, Edison, New Jersey) under the same supervision at the same pay rate. No employee was laid off.

30. Chapman and Lamparello continued to serve in the same roles as before this change and they continued to serve in these roles until at least August 5, 2010, when plaintiff quit her job in order to start a new job with another employer. The SAMC Human Resources representative, Dale Wirkus, did not change during this time period.

31. Following its Inspector General's investigation referred to above, HUD issued a report dated September 22, 2010, concluding that SAMC did not act in accordance with HUD/FHA regulations resulting in losses to the FHA Insurance fund. HUD recommended that

its Associate General Counsel for Program Enforcement review whether to pursue remedies and penalties against SAMC and its principals.

32.     In or about February 2010, REMN became the successor of SAMC and REMN is therefore liable for the violations by SAMC of the FLSA and the NJWHL. In this regard, the business of SAMC and REMN is essentially the same and the business operations of SAMC continued essentially the same under REMN; the employees of SAMC were retained by REMN; the employees of SAMC kept doing the same jobs for REMN; the pay and terms and conditions of employment of the SAMC employees remained the same or substantially the same under REMN; the employees continued to be supervised by the same or substantially the same supervisors; SAMC transferred work in progress to REMN; SAMC transferred its existing customers to REMN and referred new customers to REMN; and SAMC managers and corporate officers became managers and corporate officers of REMN.

## COLLECTIVE ALLEGATIONS

33.     Plaintiff brings the First Claim as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b) on behalf of herself and other similarly situated people, which shall include:

> All persons who work or worked as underwriters (including junior underwriters and quality control underwriters), closers and HUD reviewers for the defendants Real Estate Mortgage Network, Inc., Security Atlantic Mortgage Company, Inc., Noel Chapman and Samuel Lamparello in the State of New Jersey or in the State of Georgia at any time three years prior to the filing of this action through the entry of judgment in this action (the "FLSA Collective").

34.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate plaintiff, failing to pay plaintiff overtime pay for time worked in excess of 40 hours in a workweek, and misclassifying plaintiff as exempt from the overtime wage requirements of the FLSA. There are likely over a hundred similarly situated current and former employees of the defendants in New Jersey and Georgia in the positions of underwriter, closer and HUD reviewer

who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to the defendants, are readily identifiable, and can be located through defendants' records that they are required to create and maintain under applicable federal and state law. Notice should be sent to the FSLA Collective pursuant to 29 U.S.C. § 216(b).

35. Defendants' violations of the FLSA described above have been willful and, therefore, a three year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C. § 255(a).

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings the Second Claim as a class action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class, consisting of:

> All persons who work or worked as underwriters (including junior underwriters and quality control underwriters), closers and HUD reviewers for the defendants Real Estate Mortgage Network, Inc., Security Atlantic Mortgage Company, Inc., Noel Chapman and Samuel Lamparello in the State of New Jersey at any time two years prior to the filing of this action through the entry of judgment in this action (the "New Jersey Rule 23 Class").

37. The persons in the New Jersey Rule 23 Class are so numerous that joinder of all members is impracticable. The exact number of the New Jersey Rule 23 Class members is unknown to plaintiff at this time but there are believed to be over a hundred such persons. The identity of the New Jersey Rule 23 Class members is known to the defendants and is contained in the employment records that the defendants are required to create and maintain as a matter of state and federal law.

38. Plaintiff's claims are typical of the claims of the other members of the New Jersey Rule 23 Class as plaintiff and all other members of the New Jersey Rule 23 Class sustained

damages arising out of defendants' conduct in violation of the New Jersey State laws complained of herein. The New Jersey Rule 23 Class members work, or have worked, for the defendants in New Jersey as underwriters, closers and HUD reviewers were improperly classified as exempt employees and not paid overtime wages by the defendants. They have sustained similar types of damages as a result of defendants' failure to comply with the NJWHL and supporting regulations of the New Jersey Department of Labor and Workplace Development contained in the New Jersey Administrative Code (NJAC).

39. Plaintiff will fairly and adequately protect the interests of the members of the New Jersey Rule 23 Class and has retained counsel competent and experienced in complex class action litigation.

40. Plaintiff has no interests that are contrary to or in conflict with those of the other members of the New Jersey Rule 23 Class.

41. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

42. Common questions of law and fact exist as to all members of the New Jersey Rule 23 Class and predominate over any questions affecting solely individual members. Among the questions of law and fact common to the New Jersey Rule 23 Class are:

    a.    Whether the NJWHL and the supporting regulations were violated by defendants' acts as alleged herein;

    b.    Whether defendants failed to pay overtime wages to plaintiff and other New Jersey Rule 23 Class members for time worked in excess of 40 hours in a workweek, as required by the NJWHL, N.J.S.A. 34:11-56a4 and N.J.A.C. 12:56-6.1-6.7;

    c.    Whether the defendants improperly classified plaintiff and other New Jersey Rule 23 Class members as employees exempt from the overtime pay requirements of the NJWHL and the NJAC; and

    d.    Whether plaintiff and the New Jersey Rule 23 Class have sustained damages and, if so, the proper measure of such damages.

43. Defendants have acted or have refused to act on grounds generally applicable to the New Jersey Rule 23 Class, thereby making appropriate relief with respect to the New Jersey Rule 23 Class as a whole.

44. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since damages suffered by individual New Jersey Rule 23 Class members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for plaintiff and New Jersey Rule 23 Class members to individually seek redress for the wrongful conduct alleged. Individual class members lack the financial resources to conduct a thorough examination of defendants' compensation practices to prosecute vigorously a lawsuit against the defendants to recover such damages. Class litigation is superior because it will obviate the need for unduly duplicative litigation.

## FACTUAL ALLEGATIONS

45. Defendants REMN, SAMC and the individual defendants employ and employed plaintiff and other underwriters, closers and HUD reviewers in River Edge, New Jersey, Edison, New Jersey and Kennesaw, Georgia. Defendants through their policies, practices, and supervisors directed the work activity of plaintiff and other underwriters, closers and HUD reviewers.

46. To make sure that it has been accurately prepared for the closing, defendants suffered and permitted plaintiff and other underwriters, closers and HUD reviewers to regularly work more than eight hours per day and more than forty hours per week without overtime compensation for all overtime hours worked. Employees are given turnaround times for assignments and employees routinely worked through lunch and at home to meet these requirements. In or about June 2010, plaintiff asked defendant Chapman about overtime compensation and plaintiff was told by Chapman that he did not pay overtime to underwriters.

47. Defendants are in the business of selling mortgages and the work of underwriters, closers and HUD reviewers is and was directly related to mortgage sales. The defendants' mortgage sales business is operated in substantially the same manner as countless other mortgage companies nationwide. This straight-line operation begins with salespersons who receive mortgage applications from individuals and through mortgage brokers, real estate agents, and others. The necessary documents for a credit review are collected and the file is reviewed by underwriters. The underwriter compares the contents of the application to a detailed list of criteria provided by the company and if they conform, the loan is approved. When approved the file moves to the closers and HUD reviewers who prepare the standard closing paperwork and arrange for the disbursement of funds.

48. As an underwriter, plaintiff evaluated whether to issue loans to individual loan applicants by comparing the application to a detailed set of guidelines known as the credit guide which sets out criteria for loan approval.

49. As an underwriter, plaintiff's work is not related to either setting management policies or general business operations, but rather concerns the production of loans.

50. Junior underwriters perform substantially the same work as underwriters. The principal difference is that junior underwriters cannot themselves sign-off on mortgage approvals.

51. The work of a junior underwriter is not related either to setting management policies or general business operations, but rather concerns the production of loans.

52. Quality control underwriters review a sampling of mortgage application files as a double check to insure that applications being approved for mortgages by underwriters are in conformance with the defendants' credit guidelines.

53. The work of a quality control underwriter is not related either to setting management policies or general business operations, but rather concerns the production of loans.

54. Closers prepare the closing documents, arrange for the disbursement of loan funds and handle the standard procedures set by defendants required to conclude the mortgage transaction.

55. The work of a closer is not related either to setting management policies or general business operations, but rather concerns the production of loans.

56. HUD reviewers check the HUD settlement statement, Form HUD-1 or 1A to make sure that it has been accurately prepared. Closers and HUD reviewers work closely together.

57. The work of a HUD reviewer is not related either to setting management policies or general business operations, but rather concerns the production of loans.

58. The terms and conditions of employment of underwriters, closers and HUD reviewers are similar and are similarly situated within the meaning of the FLSA and the NJWHL.

59. Defendants uniformly misrepresented to plaintiff and other mortgage underwriters, closers and HUD reviewers that they were exempt, salaried employees and, therefore, ineligible to receive overtime pay.

60. However, plaintiff and other underwriters, closers and HUD reviewers are and were nonexempt employees who are and were entitled to overtime pay.

61. Because defendants did not pay plaintiff and other underwriters, closers and HUD reviewers for their overtime hours, defendants did not provide plaintiff and other underwriters, closers and HUD reviewers with all compensation owed to them.

62. Defendants' unlawful conduct has been widespread, repeated and consistent.

63. Defendants' conduct was willful and in bad faith, and has caused significant damages to plaintiff and the FLSA Collective and New Jersey Rule 23 Class.

## FIRST CLAIM FOR RELIEF
## Fair Labor Standards Act
## Unpaid Wages and Overtime Pay

64. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

65. At all relevant times, the plaintiff and the FLSA Collective were employed by defendants within the meaning of the FLSA.

66. Defendants were required to properly pay plaintiff and others similarly situated all wages due including applicable overtime wages for all hours worked in excess of 40 hours in a workweek.

67. Defendants failed to pay plaintiff and the FLSA Collective all wages due including overtime wages of not less than one and one-half times the regular rate of pay for each

hour worked in excess of 40 hours in a workweek to which they were entitled in accordance with the FLSA, 29 U.S.C. §207.

68. Defendants illegally misclassified plaintiff and the FLSA Collective in an effort to avoid the obligation to pay plaintiff and the FLSA Collective overtime compensation in accordance with the FLSA, 29 U.S.C. §207.

69. Defendants' violation of the overtime requirements of the FLSA was part of their regular business practice and constituted a pattern, practice, and/or policy.

70. As a result of defendants' violations of the FLSA, plaintiff and others similarly situated have suffered damages by being denied pay for all of their hours worked, by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages in an amount equal to their unpaid wages, prejudgment and postjudgment interest, and reasonable attorneys' fees and costs pursuant to the FLSA, 29 U.S.C. §216(b).

71. Defendants' unlawful conduct, as described above, was willful and intentional. Defendants knew or should have known that the practices complained of herein were unlawful. Defendants knew that plaintiff and the FLSA Collective routinely worked in excess of forty hours per week. Defendants improperly classified plaintiff and other similarly situated as exempt employees and defendants lacked any good-faith basis for this classification.

72. Defendants' violations of the FLSA in this First Claim for Relief have been willful and, therefore, a three-year statute of limitations applies pursuant to the FLSA, 29 U.S.C. §255(a).

### SECOND CLAIM FOR RELIEF
### New Jersey Wage and Hour Law
### Unpaid Wages and Overtime Pay

73. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

74. At all relevant times, the plaintiff and the New Jersey Rule 23 Class were employed by defendants within the meaning of the NJWHL.

75. Defendants willfully violated plaintiff's rights and the rights of the members of the New Jersey Rule 23 Class, by unlawfully classifying them as exempt employees and failing to pay them overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

76. As a result of defendants' violations of the NJWHL, plaintiff and others similarly situated have suffered damages by being denied pay for all of their hours worked, by being denied overtime wages in accordance with the NJWHL in amounts to be determined at trial, and are entitled to recovery of such amounts, prejudgment and postjudgment interest, and reasonable attorneys' fees and costs pursuant to the NJWHL.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff, the FLSA Collective and the New Jersey Rule 23 Class pray for the following relief:

A. An order certifying the case as a collective action for the violations of the FLSA, as it pertains to the First Claim under the FLSA, 29 U.S.C. §216(b) for the employees described herein and designating plaintiff's counsel as counsel for the FLSA Collective;

B.      Designation of the named plaintiff as representative of the FLSA Collective;

C.      An order certifying the case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure as it pertains to the Second Claim for the class of employees described herein, certifying plaintiff as the class representative and designating plaintiff's counsel as Class counsel;

D.      Judgment for plaintiff and the FLSA Collection Action members for all statutory, compensatory, and liquidated damages, or any other damages authorized by law or equity, sustained as a result of defendants' unlawful conduct, as well as prejudgment and postjudgment interest;

E.      Judgment for plaintiff and the New Jersey Rule 23 Class members for all statutory, compensatory, and liquidated damages, or any other damages authorized by law or equity, sustained as a result of defendants' unlawful conduct, as well as prejudgment and postjudgment interest;

F.      An award to plaintiff and the FLSA Collective and New Jersey Rule 23 Class for their reasonable attorneys' fees, costs, including expert fees, and expenses as authorized by law;

G.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and under appropriate state law; and

H.      Any and all other relief as authorized by the federal or state statutes, common law or equity which the Court deems appropriate under the circumstances.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

        LAW OFFICES OF MITCHELL SCHLEY, LLC

        By: ___/s/Mitchell Schley_____
        Mitchell Schley
        mschley@schleylaw.com
        197 Route 18 South
        South Tower, Suite 3000
        East Brunswick, NJ 08816
        Telephone: 732-214-2612

        ABBEY SPANIER RODD & ABRAMS, LLP
        Judith L. Spanier
        jspanier@abbeyspanier.com
        Natalie S. Marcus
        nmarcus@abbeyspanier.com
        212 East 39th Street
        New York, New York 10016
        Telephone: 212-889-3700

        **Attorneys for Plaintiff**

Dated: January 26, 2012

# FAIR LABOR STANDARDS ACT CONSENT

I consent to be a party plaintiff in a lawsuit against Real Estate Mortgage Network, Inc., ~~Real Estate Mortgage Network Funding, LLC~~ Atlantic Security Mortgage Company, Inc., Peter Norden, ~~Noel Chapman~~ and Samuel Lamparello and other related entities and individuals in order to seek redress for violations of Fair Labor Standards Act, pursuant to 29 U.S.C. §216(b). I hereby designate the Law Offices of Mitchell Schley, LLC and Abbey Spanier Rodd & Abrams, LLP to represent me in such a lawsuit.

_____
Signature

Patricia M. Thompson
Full Legal Name (Print)

1035 Hillside Dr
Address

North Brunswick, NJ         08902
City, State                 Zip Code