UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                                         )
PATRICIA THOMPSON, on behalf of        )
Herself and all others similarly situated,    )    Case No.:    2:11-cv-01494-DMC -JAD
                                                         )
                    Plaintiffs,                       )
-against-                                             )
                                                         )
REAL ESTATE MORTGAGE NETWORK, )
INC., SECURITY ATLANTIC MORTGAGE )
COMPANY, INC., NOEL CHAPMAN, an   )
Individual and SAMUEL LAMPARELLO,   )
an Individual.                                      )
                                                         )
                    Defendants.                   )
_____ )

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**THE AMENDED COMPLAINT**

1

# Table of Contents

I. Background……………………………………………………………………………........ 4

II. Legal Standard ……………………………………………………………………………... 4

III. Argument…………………………………………………………………………………….. 6

    a. The Amended Complaint Fails to Allege Facts that Could Demonstrate that Mr. Chapman or Mr. Lamparello was an Employer of Plaintiff………………...… 6

    b. The Amended Complaint is not Plead with Sufficient Specificity Against REMN as it Pertains to the Period of Time Plaintiff was Employed by SAMC ..…….....… 9

    c. Plaintiff Cannot Assert a Rule 23 Class Action on Behalf of Individuals with Different Employers, Job Titles, Job Responsibilities, and Job Locations ...…… 12

# Table of Authorities

29 USC § 201 ................................................................................................................ 4

29 U.S.C. § 203(d) ........................................................................................................ 6

Fed. R. Civ. P 23(a) ..................................................................................................... 12

NJSA § 34:11-56a ......................................................................................................... 4

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ..................................................................... 4, 5

*Baby Neal v. Casey,* 43 F.3d 48 (3d. Cir. 1994) ........................................................... 13

*Bailey v. Reed*, 29 Fed. Appx. 874 (3rd Cir. 2002) ........................................................ 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................... 5, 10

*Byers v. Intuit, Inc.*, 600 F.3d 286 (3rd Cir. 2010) ........................................................ 5, 9

*Chen v. Century Buffet & Rest.*, 2012 U.S. Dist. LEXIS 4214 (D. N.J. 2012) ............. 6

*Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529 (2d Cir. 2009) ............................... 14

*Dole v. Haulaway, Inc.*, 723 F. Supp. 274 (D.N.J. 1989) ............................................. 7

*Donovan v. Agnew*, 712 F.2d 1509 (1st Cir. 1983) ....................................................... 6

*Edwards v. Audobon Ins. Group Co.*, 2004 U.S. Dist. LEXIS 27562 (S.D. Miss. 2004) .......... 14

*Golod v. Bank of Am. Corp.,* 2010 U.S. App. LEXIS 25403 (3rd Cir. 2010) ................ 5

*Gutierrez v. Johnson & Johnson*, 269 F.R.D. 430 (D.N.J. 2010) ................................. 13, 16, 17

*Havey v. Homebound Mortg., Inc.*, 2005 U.S. Dist. LEXIS 27036 (D.Vt. 2005) ....... 14

*In re G-I Holdings, Inc.,* 380 F. Supp. 2d 469 (D. N.J. 2005) .................................... 11

*In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265 (S.D.N.Y. 2007) ...................... 17

*McKee v. Harris-Seybold Co.,* 109 N.J. Super. 555 (N.J. Law Div. 1970) ...................................... 11

*Mendoza v. Zirkle Fruit Co.*, 222 F.R.D. 439 (E.D.Wash. 2004) ................................................. 17

*Michelon v. FM Home Improvement, Inc.*, 2010 U.S. Dist. LEXIS 93425 (D.N.J. 2010) .......... 10

*Morisky v. Public Service Electric and Gas Company*, 111 F. Supp. 2d 493 (D.N.J. 2000) ............................................................................................................................. 14, 15, 16, 17

*Morse v. Lower Merion School District*, 132 F.3d 902 (3rd Cir. 1997) ....................................... 5

*Phillips v. County of Allegheny*, 515 F.3d 224 (3rd Cir. 2008) ..................................................... 5

*Ramirez v. Amsted Indus., Inc.*, 86 N.J. 332 (N.J. 1981) ............................................................... 11

*Sheridan v. NGK Metals Corp.*, 609 F.3d 239 (3rd Cir. 2010) ...................................................... 5

*Sandom v. Travelers Mortgage Servs., Inc.*, 752 F. Supp. 1240 (D. N.J. 1990) ................. 6, 7, 8

*Tatum v. Chrysler Group LLC*, 2011 U.S. Dist. LEXIS 32362 (D. N.J. 2011) ............................... 11

*Woodrick v. Jack J. Burke Real Estate, Inc.*, 306 N.J. Super. 61 (N.J.App.Div. 1997) .................. 11

## I. Background

This matter arises out of Plaintiff's attempt to hold two distinct corporate Defendants, Real Estate Mortgage Network, Inc. ("REMN") and Security Atlantic Mortgage Company, Inc. ("SAMC"), and two individuals, Noel Chapman and Samuel Lamparello, liable for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 USC § 201 *et seq.*, or the New Jersey State Wage and Hour Law ("NJWHL"), NJSA § 34:11-56a *et seq*. Plaintiff's Amended Complaint is her second attempt at setting forth these causes of action, as her initial Complaint was dismissed after this Court determined that the Complaint failed to set forth facts that could establish her claims. See, DE # 23 and 24. Although this Court granted Plaintiff leave to amend, Plaintiff has still failed to make the requisite factual allegations that, if proven true, would demonstrate an employee-employer relationship between Plaintiff and the Defendants. Moreover, the Amended Complaint is also deficient with respect to its attempts to assert claims on behalf of a diverse class of employees inasmuch as the members of this putative class had different employers, different job titles, responsibilities and functions, different pay structures, and different locations/supervision.

As set forth in detail herein, Plaintiff's Amended Complaint is still impermissibly vague and conclusory, rendering dismissal appropriate. Likewise, dismissal of her Rule 23 class action claim for relief under the NJWHL is also warranted given that Plaintiff is neither similarly situated nor remotely similar to the divergent and impermissibly heterogeneous class she seeks to represent.

## II. Legal Standard

In order to survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570

(2007). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Bailey v. Reed*, 29 Fed. Appx. 874, 875 (3rd Cir. 2002) (citing *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3rd Cir. 1997)). This standard requires that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Byers v. Intuit, Inc.*, 600 F.3d 286, 291 (3rd Cir. 2010) (quoting *Twombly,* 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Golod v. Bank of Am. Corp.,* 2010 U.S. App. LEXIS 25403, 5 - 6 (3rd Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)).

Although the Court must accept as true non-conclusory factual allegations for the purposes of a motion to dismiss, as is the case here, the Supreme Court has held that courts must not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S.Ct. at 1949-50. As the United States Court of Appeals for the Third Circuit has noted, "After *Twombly*, it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3rd Cir. 2008) (quoting *Twombly* at 1969 n.8). Specifically, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 263 n.27 (3rd Cir. 2010) (quoting *Iqbal* at 1949). In this case, Plaintiff must then have set forth facts that, if true, demonstrate the existence of an employee-employer relationship and that she is similarly situated to the classes she seeks to represent. The "Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 129 U.S. at 1954.

III. Argument

### a. The Amended Complaint Fails to Allege Facts that Could Demonstrate that Mr. Chapman or Mr. Lamparello was an Employer of Plaintiff

The FLSA imposes individual liability on "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The NJWHL follows a nearly identical standard. *Chen v. Century Buffet & Rest.*, 2012 U.S. Dist. LEXIS 4214 (D. N.J. 2012). In applying that standard, courts have required that the individual have "had operational control of significant aspects of the corporation's day to day functions, including compensation of employees." *Sandom v. Travelers Mortgage Servs., Inc.*, 752 F. Supp. 1240, 1251 (D. N.J. 1990) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1514 (1st Cir. 1983)). Therefore, when viewed through the pleading requirements set forth above, it is evident that Plaintiff must allege facts that, if proven true, would show that Mr. Chapman and Mr. Lamparello had operational control of significant aspects of either SAMC's or REMN's day to day functions and that this operational control included control over Plaintiff's and the class's compensation.

In this regard, Plaintiff once again has failed to satisfy the threshold pleading requirement and instead simply restated the applicable legal standard. Amended Complaint at ¶¶ 16 and 26. The Amended Complaint does not contain allegations of fact that would demonstrate that either of the individual Defendants had operational control over SAMC; similarly, there are no facts alleged showing operational control over REMN. Instead, Plaintiff makes the general and conclusory allegation that "Chapman and Lamparello made decisions concerning SAMC's and REMN's day-to-day operations." *Id*. at ¶ 26.

Indeed, Plaintiff has added very little in this regard to the Complaint that was previously found insufficient as a basis to proceed against Mr. Chapman and Mr. Lamparello by this Court. Specifically, Amended Complaint Paragraphs 17 - 19 and 21, pertaining to Mr. Chapman, are

nearly identical to Paragraphs 22 - 25 of the initial Complaint, which was found defective. The only additional allegations pertaining to Mr. Chapman are that he became an Executive Vice President of REMN in 2011 (Amended Complaint at ¶ 17), he sent an email on July 1, 2010 generically appreciative of employees' efforts (*Id*. at ¶ 20), and that Plaintiff's supervisor "would consult with, among others, Chapman or Lamparello" when unspecified assistance was needed (*Id*. at ¶ 26).

Likewise, Amended Complaint Paragraphs 22 - 25, pertaining to Mr. Lamparello, are almost identical to Paragraphs 26 - 29 of the defective Complaint. The only additional allegations pertaining to Mr. Lamparello are that he became an officer of REMN in 2011 (Amended Complaint at ¶ 22), and that Plaintiff's supervisor "would consult with, among others, Chapman or Lamparello." (*Id*. at ¶ 26).

The fact alone that Mr. Chapman and Mr. Lamparello became officers of REMN in 2011 does not establish that these individuals "had operational control of significant aspects of the corporation's day to day functions, including compensation of employees." *Sandom*, 752 F. Supp. at 1251. There are no facts alleged explaining Mr. Chapman's and Mr. Lamparello's actual responsibilities with either SAMC or REMN. Alleging a role as an officer alone does not mean that an individual had control of the business's day to day operations, let alone its compensation plan(s) or its employees' schedules. *Id*. at 1251 - 1252 ("nothing in the plaintiff's complaint, nor in the EEOC charges, indicates which of the individual corporate officer defendants, if any, had operational control of significant aspects of the corporation's day to day functions, including compensation of employees . . . These facts must be alleged in order to find that the individual defendants may be held liable"); see also, *Dole v. Haulaway, Inc.*, 723 F. Supp. 274, 286-287 (D.N.J. 1989) ("A corporate officer with operational control is an employer") (emphasis added).

7

Indeed, this type of generic assertion is exactly what the Supreme Court rejected in *Iqbal/Twombley*.

Moreover, such allegations cannot possibly be relevant to Plaintiff's claims as Mr. Chapman and Mr. Lamparello became officers of REMN in 2011, long after Plaintiff alleges her employment with REMN concluded. Amended Complaint at ¶ 5. Even if status as an officer of REMN could subject an individual to "employer" status, Mr. Chapman and Mr. Lamparello could still not possibly be found to be Plaintiff's employer on this basis since such titles were not achieved until after Plaintiff had ceased working for REMN.

Similarly, the mere fact that Plaintiff's supervisor "would consult with, among **others**, Chapman or Lamparello" does not prove that Mr. Chapman and Mr. Lamparello were statutory employers. Amended Complaint at ¶ 26 (emphasis added). Again, the fact alone that Plaintiff's supervisor consulted Mr. Chapman and Mr. Lamparello as to the handling of work and personnel problems cannot possibly demonstrate that they "had operational control of significant aspects of the corporation's day to day functions, including compensation of employees," as there is no indication of the frequency, nature, or type of issues that were brought to the individual Defendants, the role of the "others" that also addressed these issues and the interplay between the individual Defendants and these "others," and there is no allegation that these discussed matters included hours worked or compensation. *Sandom*, 752 F. Supp. at 1251. There is also no indication whether the supervisor has required to report to Mr. Chapman and/or Mr. Lamparello, or was merely getting their opinions, as well as others' opinions, because the supervisor valued their experience and/or judgment. Nor is it alleged Mr. Chapman or Mr. Lamparello actually opined on such matters, or whether their opinions were sought as to related business matters unconnected with wages, hours, or working conditions.

8

As it pertains to Plaintiff's allegation that Mr. Chapman once sent a company-wide e-mail thanking people for their respective efforts, this allegation is of no benefit to Plaintiff as it does not demonstrate that Mr. Chapman had control over the hours worked, just that he was appreciative of some employees' efforts. Moreover, the e-mail, as alleged in the Amended Complaint, could not possibly demonstrate that Mr. Chapman had control over compensation inasmuch as there is no reference to compensation.

It is therefore clear that the allegations asserted against Mr. Chapman and Mr. Lamparello fail to meet the minimum pleading requirements set forth by the Supreme Court in *Twombly* and *Iqbal*. Plaintiff's allegations are deficient, conclusory, boilerplate statements that are legally insufficient under the applicable law to establish either Mr. Chapman or Mr. Lamparello as "employers." Similar to the original, defective Complaint, there are simply no facts alleged that could establish whether any of the individual Defendants had contact with the Plaintiff, whether they personally supervised the employee's performance, day to day work schedule or tasks, whether they were responsible for hiring or firing the Plaintiff, or whether they had any input, let alone control, over compensation. In the absence of such factual allegations, Plaintiff cannot establish that either individual Defendant is a statutory "employer."

  **b. The Amended Complaint is not Plead with Sufficient Specificity Against REMN as it Pertains to the Period of Time Plaintiff was Employed by SAMC**

The Amended Complaint again fails to satisfy the pleading requirements of *Twombly* and *Iqbal* as it pertains to the two corporate Defendants, SAMC and REMN. As set forth above, "[f]actual allegations must be enough to raise a right to relief above the speculative level;" however, the allegations regarding REMN for the period of time Plaintiff was admittedly employed by SAMC do not meet this standard as the Amended Complaint contains more conclusory allegations and factual allegations that are not legally relevant. *Byers*, 600 F.3d at

9

291 (quoting *Twombly,* 550 U.S. at 555).  Specifically, the Amended Complaint fails to set forth any facts that could establish that REMN was either a joint employer with SAMC, or that REMN is subject to successor liability flowing from SAMC.  The absence of such facts is critical in this case, where SAMC is no longer in business and is defunct, and Plaintiff is attempting to hold REMN, which is a going-concern, responsible for SAMC's purported liability.  In other words, Plaintiff is attempting to expand the time period for which she may seek recovery by claiming that REMN is liable for SAMC's obligations, but, as set forth below, there are no facts alleged that would warrant exposing REMN to liability, as well as litigation and discovery, of SAMC's purported tortious conduct.

In order to establish that REMN and SAMC were joint employers thus justifying the imposition of liability on REMN for the period of time (from June 8, 2009 to February 2010) that Plaintiff was admittedly employed by SAMC, Plaintiff needs to establish that "(1) one employer acts directly or indirectly in the other employer's interest, and (2) the employers are not completely dissociated with each other and directly or indirectly share control of the employee." *Michelon v. FM Home Improvement, Inc.*, 2010 U.S. Dist. LEXIS 93425, 11 (D.N.J. 2010).  Simply put, there are no facts alleged in the Amended Complaint that, if proven, would show that REMN and/or SAMC were acting in the other's interest; instead, the Amended Complaint contains merely another conclusory allegation that REMN was "an employer and/or joint employer."  Amended Complaint at ¶ 11.  Plaintiff's specific factual allegations pertaining to REMN's retention of former SAMC employees and its use of space used by SAMC does not establish that SAMC acted in REMN's interest or, more obviously, that REMN and SAMC are so closely associated with each other that they shared control of Plainitff.  *Id*. at ¶¶ 27 - 29.

In addition to a joint employer theory, Plaintiff also suggests that REMN has successor liability flowing from SAMC. In order to establish successor liability, Plaintiff must show, "(1) the purchasing corporation expressly or impliedly agreed to assume such debts and liabilities, (2) the transaction amounts to a consolidation or merger of the seller and purchaser, (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape responsibility for such debts and liabilities." *In re G-I Holdings, Inc.,* 380 F. Supp. 2d 469, 475 (D. N.J. 2005) (quoting *Ramirez v. Amsted Indus., Inc.*, 86 N.J. 332, 340-341 (N.J. 1981)). In this respect, the facts actually alleged by Plaintiff in Paragraphs 27 - 29 of the Amended Complaint do not establish any of the four methods by which Plaintiff could conceivably establish successor liability. The retention of former SAMC employees and the use of space used by SAMC are not relevant to establishing successor liability as such facts, if proven, have nothing to do with the assumption of liabilities, the nature of the transaction, or any fraudulent transaction.

Indeed, even if REMN assumed SAMC's operations following HUD's investigation and enforcement efforts against SAMC, that would not be sufficient to demonstrate successor liability under the continuation theory. New Jersey law makes clear that "continuity of operations is not enough to find that the successor is a mere continuation." *Woodrick v. Jack J. Burke Real Estate, Inc.*, 306 N.J. Super. 61, 74 (N.J.App.Div. 1997) citing *McKee v. Harris-Seybold Co.,* 109 N.J. Super. 555, 570 (N.J. Law Div. 1970). Rather, the "common factors that courts have consistently relied upon . . . included common identity of ownership and control such as common stockholders and directors, common officers, adherence to common business plans, and sameness of product lines." *Tatum v. Chrysler Group LLC*, 2011 U.S. Dist. LEXIS 32362, 7 (D. N.J. 2011); see also, *Woodrick*, 306 N.J. Super. at 74; *McKee,* 109 N.J. Super. at 570. The facts alleged in Paragraphs 27 - 29 of the Amended Complaint, as well as the allegations in Paragraph 32, do not pertain to

11

ownership nor management.  As a result, even if REMN assumed aspects of SAMC's business as alleged in the Amended Complaint, the facts necessary to establish successor liability are not so much as alleged in the Amended Complaint, meaning dismissal is proper.

For these reasons, the Amended Complaint lacks allegations sufficient under *Twombly* and *Iqbal* to set forth valid claims of an employer-employee relationship between Plaintiff and either SAMC or REMN.

      **c.**  **Plaintiff Cannot Assert a Rule 23 Class Action on Behalf of Individuals with Different Employers, Job Titles, Job Responsibilities, and Job Locations**

As set forth above, Plaintiff is pursuing a Rule 23 class action for purported violations of the NJWHL with respect to the payment of minimum wages for all hours worked and overtime pay.  The Rule 23 Class is defined as:

> All persons who work or worked as underwriters (including junior underwriters and quality control underwriters), closers and HUD reviewers for the defendants Real Estate Mortgage Network, Inc., Security Atlantic Mortgage Company, Inc., Noel Chapman and Samuel Lamparello in the State of New Jersey at any time two years prior to the filing of this action through the entry of judgment in this action.

Amended Complaint at ¶ 36.  However, this class, as defined in the Amended Complaint, fails to meet the requirements of Rule 23.  In order to maintain a class action under Rule 23, the class must be so numerous that joinder of all members is impracticable, the class must share common questions of law or fact, the claims of the representative parties (in this case, Plaintiff alone) must be typical of the claims of the class, and the representative parties must fairly and adequately protect the interests of the class.. Fed. R. Civ. P 23(a).  The Amended Complaint fails to allege facts, as required by *Iqbal/Twombley*, that, if proven true, would constitute a sufficiently narrow class under Rule 23.  Therefore, Plaintiff's request for class relief must be dismissed.  Instead, as highlighted in the Amended Complaint, the proposed Rule 23 class is a

diverse collection of individuals performing different jobs, at different times, for different employers with different supervisors, and under different working conditions.

By way of background, it is Plaintiff's burden to establish "that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met." *Baby Neal v. Casey,* 43 F.3d 48, 55 (3d. Cir. 1994). In determining whether Plaintiff has alleged facts sufficient under *Iqbal/Twombley* to meet her burden, the Rule 23 elements of "commonality and typicality requirements tend to merge." *Gutierrez v. Johnson & Johnson*, 269 F.R.D. 430, 435 (D.N.J. 2010). However, "Commonality is satisfied where plaintiffs have made a *significant showing* that the named plaintiffs share at least one question of law or fact with the grievances of the prospective class." *Id*. (internal quotations omitted) (italics in original). Similarly, "To prove typicality, plaintiffs must show that the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Id*. (internal quotations omitted).

Plaintiff, herself an underwriter, seeks to establish a single class composed of underwriters, junior underwriters, quality control underwriters, closers and HUD reviewers despite the fact that these job titles involve different responsibilities and functions and therefore result in very different analysis under the applicable law. Amended Complaint at ¶¶ 47 - 57. Individuals with such disparate job duties fail to satisfy the commonality requirement of Rule 23. *Gutierrez*, 269 F.R.D. at 437 ("occupational and geographical diversity of the putative class undermined plaintiffs' allegations of commonality . . . the considerable occupational and geographical diversity of the putative class would render the case *unmanageable,* a determination that goes to *Rule 23(b)(2)*, and one that the Third Circuit has deemed mandatory"). Moreover, the claims of Plaintiff, the sole representative party, are not typical of the other groups of employees proposed to be members of the Rule 23 Class, because, even among underwriters,

the analysis as to whether an exemption to the NJWHL (and FLSA) applies is very fact-specific to the work being performed by the underwriter. *Morisky v. Public Service Electric and Gas Company*, 111 F. Supp. 2d 493, 500 (D.N.J. 2000) (noting that "the question of whether defendant improperly classified employees as exempt is unique to each employee and his or her particular job responsibilities").

For instance, and by way of example of the complexities of litigating with such a broad and diverse class, underwriters are generally exempt from wage and hour requirements under the administrative exemption. See, *Edwards v. Audobon Ins. Group Co.*, 2004 U.S. Dist. LEXIS 27562, 5 - 13 (S.D. Miss. 2004) (finding an underwriter who "decide[d] what risks the company would take and at what price" an exempt administrative employee); *Havey v. Homebound Mortg., Inc.*, 2005 U.S. Dist. LEXIS 27036 (D.Vt. 2005).  However, although we do not believe this law to be applicable in this Circuit and nor do we think this law should be applicable in this case, we expect that Plaintiff will argue that certain types of underwriters, such as those determined to be involved in "production," may be treated as non-exempt based on the Second Circuit's conclusion in *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2d Cir. 2009) (noting that the job of an underwriter may be categorized as administrative or production work and that some underwriters engaged in production work would be non-exempt).  While this law is inapplicable here, to the extent Plaintiff even attempts to raise this issue in support of a claim that she is not exempt from the NJWHL, the litigation of this issue would only apply to certain underwriters in the proposed Rule 23 Class and would obviously not apply to quality control underwrites, closers, and HUD reviewers. *Id*.  Accordingly, the mere litigation of this issue (even if the argument were to be rejected) creates an unnecessary complexity in the handling of

this lawsuit, demonstrated the lack of commonality among the proposed Rule 23, and exacerbates the difficulties in managing such a broad and diverse class action.

Moreover, Plaintiff, as the sole class representative, cannot adequately represent the claims of the junior underwriters and the quality control underwriters, let alone the closers and HUD reviewers, because she has different job responsibilities, her claims and resulting legal questions are not typical of these proposed class members, and Plaintiff's unique claims will predominate over the diverse claims of the other classes of underwriters.  "Because of the individualized nature of the factual and legal inquiry necessary to determine an employee's exemption status discussed at length above, the named plaintiffs factual or legal stance cannot be said to be characteristic of the other class members."  *Morisky*, 111 F. Supp. at 500.  Furthermore, the lack of commonality and typicality between Plaintiff and other underwriters included in the proposed Rule 23 Class is exacerbated by the fact that Plaintiff also seeks to include closers and HUD reviewers, who performed vastly different job functions, in the proposed Rule 23 class.  Not only are Plaintiff's claims potentially typical of the claims of any group of employees other than underwriters, but Plaintiff has failed to join individuals from these other classes of employees as a representative party in this lawsuit and, therefore, her claims, and the claims of other underwriters, will necessarily predominate. *Id*.

Furthermore, the Amended Complaint does not contain any allegation of fact showing that these employees with different job responsibilities were treated the same for purposes of wage and hour treatment.  In other words, there are no non-conclusory allegations that underwriters, junior underwriters, quality control underwriters, closers, and HUD reviewers were subjected to the same methods of payment, hours worked, or timekeeping methods in violation of the NJWHL (in fact, it is doubtful that a representative employed as an underwriter would

have knowledge as to the compensation model used for individuals employed in different jobs). Obviously, different pay structures for different job functions precludes such a broad class inasmuch as this presents different questions of fact and law for which Plaintiff, as the sole class representative, is not able to adequately address as her claims are not typical of the proposed class. *Morisky*, 111 F. Supp. at 500. As a result, Plaintiff's claims would likely predominate over those of the proposed Rule 23 Class.

Moreover, Plaintiff does not make any distinction in defining the proposed Rule 23 class with respect to time. Time is a critical factor in this analysis since, over the three years preceding suit, SAMC has gone out of business and REMN has changed its compensation plans and its employment agreements. Plaintiff, who ceased working for REMN on August 5, 2010, cannot possibly allege facts, as required by *Iqbal/Twombley*, that could establish commonality and typicality between Plaintiff and individuals employed by REMN subsequent to Plaintiff. Specifically, Plaintiff has no way of knowing, or to be an adequate representative of the interests of, subsequent employees that are subject to different pay structures than Plaintiff and that have signed employment agreements that contain mandatory arbitration provisions. Simply put, a claim asserted by a current employee would pose different questions of fact and different questions of law. *Gutierrez*, 269 F.R.D. at 435. Plaintiff's claims are not typical of the claims of current or subsequent employees subjected to these different policies and cannot adequately represent these proposed class members. *Morisky*, 111 F. Supp. at 500. Moreover, issues relating to Plaintiff's compensation plan and the fact that she is not subject to compulsory arbitration will predominate.

On another note, the proposed Rule 23 class is impermissibly dissimilar insofar as it seeks to represent individuals employed by distinct employers. As set forth above, there is no

basis to conclude that REMN is a joint employer or a successor to SAMC. As a result, creating a class combining employees of REMN and SAMC will inherently present different questions of fact and law. *Morisky*, 111 F. Supp. at 500. While REMN could conceivably have liability to its own employees, any attempt by SAMC's former employees, such as Plaintiff, to assert liability against REMN necessarily produces different questions of law (as detailed above), and different questions of fact. There are no specific allegations in the Amended Complaint explaining how the same working conditions were in place at both SAMC and REMN. As a result, there is no basis to conclude that these individuals, employed by separate legal entities, were subject to the same pay structures and the same work schedules. Class actions cannot be maintained in this context when the class purports to represent employees of two distinct companies. *Mendoza v. Zirkle Fruit Co.*, 222 F.R.D. 439, 443 (E.D.Wash. 2004). *In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265, 273 (S.D.N.Y. 2007) ("the problem, as Defendants point out, is that Plaintiffs seek to certify a class of individuals who worked for different employers, at different times").

      As a final note, the putative members of the Rule 23 Class were unquestionably subject to different work conditions. These distinctions are a result of working for different companies, at different times, in different locations, under different supervision. There are no facts alleged in the Amended Complaint, pursuant to *Iqbal/Twombley*, that could demonstrate consistent supervision and work time practices. Simply put, there are no factual allegations explaining how individuals that worked different jobs for different companies at different times under different supervision and policies and in different states were subjected to the same wage and hour practices, with respect to the number of hours worked and pay structure. In fact, this issue will inherently require vastly different factual inquiry throughout discovery. *Gutierrez*, 269 F.R.D. at

17

435; *Morisky*, 111 F. Supp. at 500.  As a result, it is evident that the proposed Rule 23 Class, as pled by Plaintiff, is far too diverse to meet to the commonality requirement of Rule 23.  Likewise, Plaintiff's claims are not typical of the proposed Rule 23 Class as pled and, accordingly, in a lawsuit in which she is the sole representative plaintiff, her claims and the related issues are likely to predominate.

WHEREFORE, for the foregoing reasons, Defendants respectfully pray this Court enter an order DISMISSING the Complaint in this matter, and for such other and further relief as may be just and proper.

Respectfully submitted,

 /s/ Gary Cutler
Gary Cutler
Offit Kurman, P.A.
Ten Penn Center
1801 Market Street, Suite 2300
Philadelphia, Pennsylvania 19103
Phone: (267)338-1300
E-Mail: gcutler@offitkurman.com
*Attorney for Defendants*

 /s/ Ari Karen
Ari Karen (*Pro Hac Vice*)
Offit Kurman, P.A.
8171 Maple Lawn Blvd., Suite 200
Maple Lawn, MD 20759
Phone: (301) 575-0340
E-Mail: akaren@offitkurman.com
*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

       I hereby certify the foregoing document was filed via CM/ECF on February 24, 2012 and served on all counsel of record via Transmission of Notices of Electronic Filing generated by CM/ECF.  I also certify the foregoing document is being served on this day on Mitchell Schley, mschley@schleylaw.com, 197 Route 18 South, South Tower, Suite 3000, East Brunswick, New Jersey, 08816, (732)214-2612, and Judith L. Spanier, jspanier@abbeyspanier.com, 212 East 39th Street, New York, New York, 10016, (212)889-3700 via electronic mail.

By__/s/ Ari Karen_____
Ari Karen (*Pro Hac Vice*)
Offit Kurman, P.A.
8171 Maple Lawn Blvd., Suite 200
Maple Lawn, MD 20759
Phone: (301) 575-0340
E-Mail: akaren@offitkurman.com
*Attorney for Defendants*