NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PATRICIA THOMPSON, on behalf of Herself and all others similarly situated, | : : : | **Hon. Dennis M. Cavanaugh** |
| Plaintiffs, | : | **OPINION** |
| v. | : : : | Civil Action No. 11-CV-01494 (DMC-JAD) |
| REAL ESTATE MORTGAGE NETWORK, INC., SECURITY ATLANTIC MORTGAGE COMPANY, INC., NOEL CHAPMAN, an Individual and SAMUEL LAMPARELLO, an Individual, | : : : : : : | |
| Defendants. | : | |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>

This matter comes before the Court upon motion by Defendants Real Estate Mortgage Network, Inc. ("REMN"), Security Atlantic Mortgage Company, Inc. ("Security Atlantic"), Noel Chapman ("Chapman"), and Samuel Lamparello ("Lamparello")(collectively "Defendants") to dismiss Plaintiff Patricia Thompson's ("Thompson" or "Plaintiff") Amended Complaint, pursuant to FED. R. CIV. P. 12(b)(6).  Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After considering the submissions of all parties, it is the decision of this Court, for the reasons herein expressed that Defendants' Motion to Dismiss is **granted**.

### I.    BACKGROUND[1]

Plaintiff has brought this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §

---

[1] The facts set-forth in this Opinion are taken from the Parties' statements in their respective moving papers.

201, and the New Jersey State Wage and Hour Law, N.J.S.A. § 34:11-56a. The Defendants in this action are REMN, Security Atlantic, Chapman, and Lamparello. REMN and Security Atlantic are New Jersey corporations that operate as direct mortgage lenders. Defendants Chapman and Lamparello each held high ranking positions within one of the named Corporate Defendants.[2] Plaintiff alleges that she was employed as an underwriter by Security Atlantic from June 8, 2009 to February 2010 and by REMN in the same position from February 2010 to August 2010. With respect to each Defendant, Plaintiff alleges that each was at all relevant times an employer and/or joint employer within the meaning of FLSA 29 U.S.C. §203(a), (d), and (s)(1)(A) and within the meaning of NJWHL 34:11-56a1(g). Plaintiff submits that Defendants through their policies, practices, and supervisors directed the work activity of Plaintiff and other underwriters and closers. Plaintiff further alleges that each individual defendant, at all relevant times, acted directly or indirectly in the interest of Security Atlantic and REMN in relation to Plaintiff and those similarly situated.

Plaintiff alleges that, during the course of her employment, the Defendant's improperly classified Plaintiff as an exempt, salaried employee, ineligible to receive overtime pay. According to Plaintiff, Defendants permitted Plaintiff and other underwriters and closers to regularly work more than eight hours a day and more than forty hours per week without overtime compensation for the excess hours worked. Plaintiff maintains that Defendants uniformly misrepresented the employment status of Plaintiff and other mortgage underwriters and closers as exempt, salaried employees, when they were in fact non-exempt employees. Plaintiff claims

---

[2]Defendant Norden at all relevant times held the position as Chief Executive Officer of REMN. Defendant Chapman at all relevant times was the co-owner and Executive Vice President of Security Atlantic. Defendant Lamparello at all relevant times was the co-owner and President of Security Atlantic.

that Defendants' conduct has been widespread, repeated and consistent, and that it was willful and done in bad faith.

Plaintiff filed her initial complaint on March 6, 2011.  On December 30, 2011, the Court granted Plaintiff leave to file an amended complaint, citing the initial complaint's failure to connect Plaintiff's employment to each named Defendant.  Without such evidence, the Court was unable to determine the extent to which each Defendant would be liable.  An Amended Complaint and Collective Action Complaint was filed on January 27, 2012.  Based on their assertions that Plaintiff has still not met its burden of proving the employer status of each Defendant, Defendants collectively move to dismiss Plaintiff's Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6) for failure to adequately state a claim upon which relief may be granted. This Court finds that Plaintiff failed to plead her Amended Complaint with the requisite specificity required and Defendants' Motion to Dismiss is **granted.**

## II.    LEGAL STANDARD

In deciding a motion under Rule 12(b)(6), a District Court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the  [Plaintiff]."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).  "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations omitted).  "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986).  Instead, assuming that the

factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above a speculative level." Twombly, 550 U.S. at 555.

"A complaint will survive a motion to dismiss if it contains sufficient factual matter to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." Id. "Determining whether the allegations in a complaint are 'plausible' is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Young v. Speziale, 2009 WL 3806296, at *3 (D.N.J. Nov. 10, 2009) (quoting Iqbal, 129 S.Ct. at 1950). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–that the pleader is entitled to relief." Iqbal, 129 S.Ct. at 1950.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). The complaint must 'show' an entitlement to relief with its facts. Steedley v. McBride, 2011 U.S. App. LEXIS 20302, at *4 (3d Cir. Oct. 4, 2011) (citing Fowler v. UPMC Shadyside, 578 F.3d 203, 2011 (3d Cir. 2009)). Factual allegations contained in a certification offered in defense of a motion to dismiss will not be considered in determining the sufficiency of Plaintiff's complaint. See Solutions Partners, Inc. v. Thomas, No. 09-cv-4778, 2010 U.S. Dist. LEXIS 50840, at *7, n. 3 (D.N.J. May 21, 2010).

### III.  DISCUSSION

### 1. Employer Status of Individual Defendants Chapman and Lamparello

Plaintiff alleges violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq, and violations of the New Jersey Wage and Hour Law ("NJWHL"), §34:11-56a et seq against two distinct corporate Defendants, REMN and Security Atlantic, and two individuals, Noel Chapman and Samuel Lamparello.  Defendants assert that Plaintiff has failed to plead sufficient facts in the Amended Complaint to show Defendants are subject to individual liability under the FLSA and NJWHL. This Court applies the same analysis to the FLSA and NJWHL causes of action, as is customary in this District.  Ortiz v. Paramo, No. 06-3062, 2008 U.S. Dist. LEXIS 72387, at *11 (D.N.J. Sept. 19, 2008) (applying same analysis to FLSA and NJWHL claims) (citing Maldonado v. Lucca, 629 F. Supp. 483, 485 (D.N.J. 1986)).

The FLSA requires that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce" a minimum wage.  29 U.S.C. § 206(a).  Section 207(a)(1) of the FLSA forbids an employer from having an employee work "for more than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

To succeed on an FLSA claim, the claimant must show an employer-employee relationship exists with the named defendants.  See, e.g., Davis v. Abington Memorial Hosp., 2011 WL 4018106, at *3 (E.D. Pa. Sept. 8, 2011) ("The basic prerequisite for any FLSA lawsuit is an employment relationship between plaintiff and defendant.  Thus, in a FLSA collective

5

action, each defendant must have been the employer of at least one named plaintiff."). The definitions of "employer" and "employee" under the FLSA and the NJWHL are virtually identical. Chen v. Century Buffet & Rest., 2012 U.S. Dist. LEXIS 4214 at *6 (D.N.J. 2012). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).   "Employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1).

The terms "employer" and "employee" are interpreted expansively to effect Congress' remedial intent in enacting the FLSA. Wright v. Lehigh Valley Hospital and Health Network, No. 10-431, 2011 U.S. Dist. LEXIS 68012 at * 5 (E.D.Pa. June 23, 2011) (Rapoport, J.) (citing Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992)).   Courts view the economic realities of a particular situation to determine whether a defendant will be subject to individual liability. See Tan v. Mr. Pi's Sushi, Inc., No. 09-1579, 2010 U.S. Dist. LEXIS 134769, at *5 (D.N.J. Dec. 21, 2010) (KSH) ("[T]he consensus among courts is that the determination of whether a person is an employer cannot be limited to technical concepts, but must be viewed in accordance with economic realities").   Relevant facts to the "economic reality" inquiry are: "whether the alleged employer (1) had power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).

District Courts in this Circuit have noted other Court of Appeals holdings finding corporate officers equivalent to "employers" under the FLSA. Wright, 2011 U.S. Dist. LEXIS 68012 at *6-7 (citing Chao v. Hotel Oasis, Inc., 493 F.3d 26, 34 (1st Cir. 2007); Donovan v.

6

Grim Hotel Co., 747 F.2d 966, 971-72 (5th Cir. 1984)).  In addition to the "economic realities" test, these decisions consider the role of corporate officers in determining employee compensation rates and in decisions to prefer the payment of other obligations or retain profits. Id. at *7 (citing Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 678 (1st Cir. 1998)).  The factors deemed relevant to this personal liability analysis include the following: (1) the officer's ownership interest in the corporation, (2) degree of operation or control the officer has over the corporation's daily functions, financial affairs, and compensation practices, and (3) the officer's role in the corporation's determination to compensate (or not compensate) employees in accordance with the FLSA.  Id. at *8 (citing Baystate Alternative Staffing, 163 F.3d at 677-78).

Plaintiff's Amended Complaint purportedly demonstrates Defendants were employers of Plaintiff for purposes of liability under the FLSA and NJWHL.  In actuality, the Amended Complaint supplies few bolstering facts to supplement those found deficient in the initial complaint.  In support of the assertion Defendants functioned as Plaintiff's employer, Plaintiff relies primarily upon Lamparello and Chapman's respective job titles and conclusory statements reciting statutory employer status requirements, without specific, factual support for such statements.  For example, Plaintiff asserts that Chapman and Lamparello made decisions regarding Security Atlantic's and REMN's day-to-day operations, hiring, firing, and employee compensation. Am. Compl. ¶ 26.  However, the only statement offered to support this conclusion is the assertion that when Plaintiff's immediate supervisor needed assistance with a work-related issue, the supervisor "would consult with Chapman or Lamparello." Am. Compl. ¶ 26.

No facts are offered to demonstrate that Defendants Chapman and Lamparello were

involved in determining the rate and method of payment of employees and in maintaining employment records.  Cf. Shakib v. Back Bay Restaurant Group, Inc., 2011 U.S. Dist. LEXIS 112614, at *13 (D.N.J. 2011) (finding employer status where defendant played a part in determining rate and method of payment demonstrated through an email sent to plaintiff containing one-page sample of an "internal audit"); Montalvo v. Larchmont Farms, Inc., 2009 U.S. Dist. LEXIS 112751, at *12-13 (D.N.J. 2009) (the Court found defendant was plaintiff's "employer" where his title was President of the company and he was involved in day-to-day management).  Chapman's July 1, 2010 email, acknowledging the long hours REMN staff worked (Am. Compl. ¶ 20), does not illustrate involvement in employee compensation decisions nor the maintenance of employment records.  Plaintiff's Amended Complaint fails to allege the required facts that, if proven true, would show that Chapman and Lamparello had operational control of significant aspects of either Security Atlantic's or REMN's day-to-day functions and its control extended over Plaintiff and Plaintiff's compensation.

**2.  Joint Employer Status and Successor Liability of Defendants Security Atlantic and REMN**

Only a party classified as an employer as defined by the FLSA and NJWHL can be liable for any alleged violation of the statutes.  See Chen v. Century Buffet & Rest., 2012 U.S. Dist. LEXIS 4214 at *6 (D.N.J. 2012). The Amended Complaint alleges that REMN was a joint employer with Security Atlantic and, additionally, that REMN is subject to successor liability for wage and hour violations committed by Security Atlantic.  In order to hold REMN liable for the purported liability of Security Atlantic, a now defunct business, a joint employment relationship or successor liability must be established.  Plaintiff's Amended Complaint fails to allege specific

8

factual assertions to support the conclusion that such liability exists.

A joint employment relationship is found where: (1) "one employer is acting directly or indirectly in the other's interest in relation to the employee, and (2) where the employers are 'not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.'" Maldonado v. Lucca, 629 F. Supp. 483, 487 (D.N.J. 1986) (quoting 29 C.F.R. § 791.2(b)(2), (3)). A totality of the circumstances, rather than any particular factor, governs the joint employment determination. Zavala v. Wal-Mart Stores, Inc., 393 F. Supp. 2d 295, 329 (D.N.J. 2005). Although employees were retained and the office location remained the same (Am. Compl. ¶ 29-30), Plaintiff and other employees were required to fill out new job applications. Am. Compl. ¶ 30. No facts are offered to demonstrate one company was acting in the other's interest nor that the two exhibited a shared control of Plaintiff while Plaintiff was in the employ of Security Atlantic.

Plaintiff further argues that REMN is liable as a successor of Security Atlantic. In New Jersey, the purchaser of all or substantially all of the assets of another company is generally not liable for the debts and liabilities of the transferor. In re G-I Holdings, Inc., 380 F. Supp. 2d 469, 475 (D.N.J. 2005) (citing Ramirez v. Amsted Indus., Inc., 86 N.J. 332, 340, 431 A.2d 811 (1981)). However, successor liability exists when a plaintiff shows: "(1) the purchasing corporation expressly or impliedly agreed to assume such debts and liabilities, (2) the transaction amounts to a consolidation or merger of the seller and purchaser, (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is entered into fraudulently

in order to escape responsibility for such debts and liabilities." In re G-I Holdings, Inc., 380 F. Supp. 2d at 475. The Amended Complaint relies on the assertion that REMN is a continuation of Security Atlantic's operation. See Am. Compl. 8-9. Continuity is determined through application of a four factor test considering: "i) the continuity of management, personnel, physical location, assets, and general business operations; (ii) a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (iii) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and (iv) continuity of ownership/shareholders." Glynwed, Inc. v. Plastimatic, Inc., 869 F. Supp. 265, 275 -76 (D.N.J. 1994). Continuity of operations, alone, however, is insufficient to prove a successor is involved in a continuous relationship for purposes of a liability determination. Woodrick v. Jack J. Burke Real Estate, Inc., 36 N.J. Super. 61, 74 (N.J. App. Div. 1997) (citing McKee v. Harris-Seybold Co., 109 N.J. Super. 555, 570 (N.J. Law Div. 1970). Continuation "may be found where the facts show that the intent was for the successor to assume all the benefits and burdens of the predecessor's business, with the successor becoming a 'new hat' for the predecessor." Id. (quoting McKee, 109 N.J. Super. at 570).

Plaintiff asserts there was a change in payor name on the top of Plaintiff's pay-stub but that the employees continued to perform the same general tasks under the same supervisors (see Am. Compl. 28-29, 32), however, the Amended Complaint contains no assertion that REMN purchased assets of Security Atlantic, assumed the benefits or burdens of its business, nor contains any evidence of a common business plan. Aside from retention of employees and office space, there is little indication that REMN is not a distinct and independent entity. Thus, Plaintiff's claims against REMN on the basis of joint employer status or successor liability should

be dismissed.

## IV.    CONCLUSION

Accordingly, this Court finds that Plaintiff has failed to assert a plausible claim upon

which relief can be granted and Defendant's motion to dismiss is **granted without prejudice.**

DENNIS M. CAVANAUGH, U.S.D.J.

Date:          August __3/__, 2012
cc:            Clerk
               Hon. Joseph A. Dickson, U.S.M.J.
               File

11