|  |  |
|---|---|
| PATRICIA THOMPSON, on behalf of herself and all others similarly situated,<br><br>                Plaintiff,<br><br>          v.<br><br>REAL ESTATE MORTGAGE NETWORK, INC., et al.,<br><br>                Defendants. | Civ. No. 11-1494 (KM) (MAH)<br><br>**OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

This is an FLSA collective action brought by Patricia Thompson, the named plaintiff. In 2011, Thompson brought this collective action complaint against her prior employers, defendants Noel Chapman, Samuel Lamparello, Real Estate Mortgage Network, Inc. ("REMN"), and Security Atlantic Mortgage Company, Inc. ("SAMC", and together with Chapman, Lamparello, and REMN, the "Defendants"). Today, over eight years after this action was filed, plaintiff has yet to obtain conditional certification. Nevertheless, seven plaintiffs have learned of the action by other means and have opted in.[1]

---

[1]    Actually, the total of opt-ins was formerly eight. Defendants assert that opt-in Plaintiff Cheryl Matthews has effectively withdrawn from this action. (DE 223 p. 6, n. 5). Allegedly, Plaintiff's counsel advised Defendants, in writing, that opt-in Plaintiff Cheryl Matthews did not attend a deposition because she "was withdrawing from the action." (*Id.*). Further, allegedly, "Plaintiffs' counsel assured Defendants that her withdrawal would be forthcoming, and that any delay was due to Matthew's health condition." (*Id.*). For purposes of this opinion, I will assume these statements to be true. (*See* DE 224-1 (failing to address the Matthews issue)). They do not bear on the result.

Now before this Court are three motions. First is the motion of Defendants for summary judgment, arguing that all seven of the opt-in plaintiffs' claims are fully or partially time-barred under the FLSA. (DE 223). Second is the motion to compel arbitration for opt-ins McCourt and Pietryka. (*Id.*). Third is the motion of Thompson to equitably toll the statute of limitations applicable to Thompson and other putative collective members from May 6, 2011, the date Defendants filed their first motion to dismiss, until the Court rules on conditional certification. (DE 224).

## I.   BACKGROUND[2]

### A.   Procedural History

I survey the history of this action in two parts: first, the broader history of this interminable action and, second, the more recent happenings.

#### 1.   Broader procedural history

Thompson first filed her Complaint on March 16, 2011. On March 30, 2011, Defendants were fully served with the complaint. (DE 3–6, 8; *see also* DSOF, PR ¶ 10).

On December 30, 2011, District Judge Dennis M. Cavanaugh granted Defendants' motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to plead with the requisite specificity. (DE 23, 24).

On January 26, 2012, Thompson filed her Amended Complaint. (DE 25). She brought claims under the FLSA, 29 U.S.C. § 207 (Count I) and the NJWHL, N.J. Stat. Ann. §§ 34:11–56a–34:11–56a38 (Count II).[3] On February 24, 2012,

---

[2]   For convenience, certain docket entries will be abbreviated as follows:

Schild Decl.          =          Declaration of Philip Schild  [DE 223-2]

Sample Agrmt.          =          Ex. A to the Schild Decl.  [DE 223-2, p. 4]

[3]   This Court has subject matter jurisdiction over the federal law claim pursuant to 28 U.S.C. § 1331 and the FLSA, 29 U.S.C. § 216(b). This Court exercises supplemental jurisdiction over Thompson's state-law claim pursuant to 28 U.S.C. § 1367(a).

Defendants filed a motion to dismiss the Amended Complaint. (DE 28).

On June 30, 2012, while awaiting Judge Cavanaugh's decision on the motion to dismiss, Thompson filed a motion to toll the statute of limitations. (DE 35). The period of tolling she sought extended from the date Defendants filed their first motion to dismiss until the grant of Thompson's anticipated motion for conditional certification and dissemination of notice to the class members. (*Id.*). That motion for equitable tolling was eventually terminated.[4]

On August 31, 2012, Judge Cavanaugh, again, granted Defendants' motion to dismiss the Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (DE 38, 39).

On September 28, 2012, Thompson filed a notice of appeal of Judge Cavanaugh's January 26, 2012 opinion and order. (DE 40). On April 3, 2014, the Third Circuit vacated the dismissal and remanded. *Thompson v. Real Estate Mortgage Network*, 748 F.3d 142 (3d Cir. 2014) (DE 44).

On March 13, 2013, Thompson filed a notice of consent on behalf of Ms. Cheryl Matthews, who is, apparently, no longer an opt-in to this action. (DE 42). *See* n. 1, *supra*.

On remand from the Third Circuit, in May 2014, the case was reassigned to me and Judge Hammer. (DE 45).

In June 2014, Defendants filed their answer without raising the subject of the arbitration agreement. (*see* DE 49).

In July 2014, Defendants filed a motion for partial judgment on the pleadings (DE 52), which I denied in April 2015. (DE 106).

In September 2014, Magistrate Judge Hammer held a teleconference with the parties, in which they discussed equitable tolling and discovery related to the putative class members. (Teleconference Transcr., DE 67). According to Thompson, it was two days prior to that teleconference that Defendants first advised Thompson of any arbitration agreement. (DE 67, p. 5:20–25, 6:1–14).

---

[4] *See* Teleconference Transcr., DE 67 (Mag. Judge Hammer commenting that the motion was terminated)).

3

Defendants do not dispute that this was the first time they raised the arbitration agreement. (DE 226 p. 5). Magistrate Judge Hammer instructed the parties to renew the motion for equitable tolling. (DE 67).[5]

In October 2014, Thompson filed a renewed motion for equitable tolling. She also sought a "protective order" invalidating the arbitration agreements signed by putative class members and requiring the Defendants to "correct" prior communications with them, which had not revealed the pendency of this collective FLSA action. (DE 70). Thompson also requested that the proposed corrective order instruct Defendants to provide Thompson with the names and contact information for all putative class members. (*Id.*).

In June 2015, Magistrate Judge Hammer denied Thompson's motions without prejudice. As yet, no one had opted in (aside from Ms. Matthews, who withdrew, see n. 1, *supra*). The issue, he found, would therefore be more appropriately decided with the benefit of discovery, in connection with class certification. (DE 108).

As of December 2015, Thompson had not yet filed her motion for conditional certification. That month, Defendants filed a "motion to dismiss," treated as a motion on the pleadings, against opt-in plaintiff Matthews on statute of limitations grounds. (DE 127). Plaintiffs Thompson and opt-in Matthews opposed the motion and filed a cross-motion for equitable tolling. (DE 132).

In August 2016, I denied both motions. I believed that the statute of limitations issue was intertwined with the equitable tolling issue, which would be decided in the context of Thompson's anticipated motion for conditional certification. (DE 152).

---

[5]     Further, Judge Hammer noted his inclination that putative class discovery should include even potential class members who stood the chance of being excluded from this action because of the statute of limitations or arbitration agreements (DE 67 pp. 18:17–25, 19:1–16; *id.* pp. 18:24–25, 19:1–2 ("You can't have it both ways where there's no mention made of the arbitration provision until three years into a case, and now it's being used as both a sword and a shield."); *id.* pp. 21:23–25, 22:1–20).

In October 2016, Magistrate Judge Hammer filed a discovery order directing Defendants to produce the contact information of certain potential class members, "any and all underwriters, closers, and HUD reviewers in Georgia and New Jersey" from "March 16, 2008 to present." (DE 160). Defendants appealed (DE 162); I affirmed Judge Hammer's order. (DE 178).

### 2. Recent procedural history

On December 12, 2017, Thompson filed a motion for: (1) conditional certification, (2) notice, and (3) equitable tolling. (DE 196).

In February 2018, Defendants filed (1) a brief in opposition to Thompson's motion for conditional certification (DE 207), and (2) a motion for partial summary judgment denying equitable tolling, as well as a motion to compel arbitration. (DE 212).

In March 2018, Thompson filed a motion to summarily deny or strike the Employer's motion for partial summary judgment, claiming that it should have been filed as a cross-motion. (DE 213). In the meantime, Thompson filed no response to that motion.

In September 2018, I denied Thompson's motion to strike. The matter having become hopelessly tangled in procedural disputes, I administratively terminated the remaining motions and granted the Defendants permission to refile on the ordinary motion schedule. (DE 222).

In October 2018, Defendants refiled their motion for summary judgment and to compel arbitration. (DE 223). That same month, Thompson filed an opposition to arbitration (DE 224-2) as well as her own cross-motion for summary judgment and opposition to Defendants' summary judgment motion, (DE 224, 224-2).[6]

On May 1, 2019, I directed the parties to submit supplemental briefing regarding the effects of a recent New Jersey Supreme Court opinion on the

---

[6]     Neither party's arguments are very new—for several years, they have been dueling over equitable tolling and enforcement of the arbitration agreements. (*See e.g.*, DE 70, DE 75). Factual background on the arbitration agreements is provided *infra* I.C.

motion to compel arbitration. (DE 228 (citing *Kernahan v. Home Warranty Adm'r of Fla., Inc.*, No. 07980 (N.J. Jan. 10, 2019)). Both parties complied. (DE 231, 232).

On June 10, 2019, both parties appeared before me for oral argument. (DE 234). I reserved decision and informed the parties I would issue a written opinion.

I now consider the parties' motions, ruling that Defendants have waived their right to arbitration and that the claims of the now-existing opt-ins are equitably tolled, running from July 30, 2012 until further order of this Court, post-conditional certification.

### B.    Facts

As to the motion for summary judgment and equitable tolling, I begin by surveying the circumstances of the opt-in Plaintiffs. I then review the history of the arbitration agreements. Because I have determined that Defendants' right to enforce the arbitration agreements has been waived, I do not consider the arguments that the arbitration provisions are themselves invalid.

### 1.    The opt-ins

I consider the claims of Thompson and seven opt-in Plaintiffs on this motion for summary judgment. Two of the opt-ins, Arraya and Jones, are former HUD reviewers. (DSOF, PR ¶¶ 16, 20). Jones worked for the Defendants from November 5, 2007 to May 17, 2011. (*Id.* ¶ 6). Arraya, who is also a former closer, worked for the Defendants from June 3, 2008 to December 27, 2016. (*Id.* ¶ 20). It is an issue of fact whether Arraya was always classified as non-exempt and paid overtime. (DSOF, PR ¶ 21). It is also an issue of fact whether Defendants included all overtime or bonus pay from April 2014 forward. (*Id.* ¶ 22).

Several of the opt-ins are former underwriters: Sentman, Galida, McCourt, Haines, and Pietyrka. (*Id.* ¶¶ 14–15, 17, 19, 23). Sentman worked for the Defendants from approximately June 2009 to November 2010. (DSOF, PR ¶ 14). Galida worked for the Defendants from approximately October 2007 to

February 2011. (*Id.* ¶ 15). McCourt worked for the Defendants from August 3, 2004 to June 27, 2012. (*Id.* ¶ 17). Haines worked for the Defendants from March 1, 2011 to May 6, 2014. (*Id.* ¶ 19). Pietyrka worked for the Defendants from May 12, 2014 to February 3, 2017. (*Id.* ¶ 23).

Both McCourt and Pietyrka have at-will employment agreements with REMN, dated March 22, 2011 and May 12, 2014, respectively. (*Id.* ¶¶ 18, 24).[7] McCourt signed his agreement several years into his employment with the Defendants, whereas Pietryka signed her agreement on her first day of employment. Both agreements include an arbitration provision, a reference that the employee has a nonexempt status, and the employee's pay rate. (*Id.*). As discussed *infra,* plaintiffs dispute the validity of the arbitration provisions and assert that, by law, McCourt and Peityrka were not nonexempt. (PR ¶¶ 18, 24).

## 2. The arbitration agreements

According to Defendants, in September 2010, REMN began to consider implementing a new compensation structure for multiple positions, including, but not limited to, its underwriters. (DSOF ¶ 5 (citing Schild Decl. ¶ 5)).[8] Further, Defendants assert that they began to consider this new compensation structure in response to the Second Circuit's opinion in *Davis v. J.P. Morgan Chase & Co.,* 587 F.3d 529, 534 (2d Cir. 2009) and new legislation created by the Dodd-Frank Financial Reform Act. (DSOF ¶ 5) (citing Schild Decl. ¶¶ 2)).[9]

---

[7]     The preamble to McCourt's Agreement states that it is made and entered into on April 1, 2011. (Ex. 3 p. 1). However, on the signature page, the date is entered as March 22, 2010. (*Id.* p. 4). The month and date are hand-written, but the date is pre-typed. Because both parties presume the agreements were rolled out in 2011, I will do the same. (DE 224 p. 25, DE 226 p. 7).

[8]     Defendants assert that all compensation and employment changes were planned to go into effect simultaneously. (DSOF ¶ 6). Thompson responds that Defendants have produced no records to support this assertion and Thompson has not yet taken depositions. (PR ¶ 6).

[9]     Without reference to any particular provision, the Defendants assert that Dodd-Frank mandated certain compensation changes which went into effect by April 1, 2011. (DSOF ¶ 4 (citing Schild Decl. ¶ 2)). Defendants also present the alleged

Defendants allege that, over several months, REMN determined to revise underwriter compensation. (DSOF ¶ 7).[10] Defendants assert that the new compensation agreements for underwriters included an arbitration clause, which was also included in the non-underwriter compensation agreements drafted at the same time. (DSOF ¶ 9 (citing Schild Decl. ¶ 4; Ex. A to Schild Decl.)).

On March 16, 2011, as noted in the procedural history, Thompson first filed her Complaint. (DE 1). At that point Defendants had not been served. (DE 3-6, 8). However, Plaintiff asserts that she also issued a press release regarding the action on March 18, 2011. (PR ¶ 10). On March 30, 2011, Defendants were served with the complaint. (DE 3-6, 8; see also DSOF, PR ¶ 10).

Defendants assert that on March 22, 2011, between the date the complaint was filed and the date the Defendants were served, they rolled out the underwriter compensation agreements that included the arbitration clause. (DSOF ¶ 9). In support, Defendants rely on the statement of Philip Schild, General Counsel for REMN. (Schild Decl. ¶ 4). Defendants also rely on a sample Wholesale Underwriter Employment Agreement dated April 1, 2011, (Sample Agrmt. p. 1), and signed[11] on March 22, 2011. (Id. p. 4). Although Defendants have at times seemed to imply that the arbitration provisions had something to do with the requirements of Dodd-Frank, at oral argument they clarified that the issues are independent; the Dodd-Frank revisions to employment agreements merely provided the occasion or opportunity for the addition of the

implications of Davis and Dodd-Frank as material facts. (DSOF ¶ 1–4). In response, Thompson repeatedly asserts that such factual assertions are veiled legal conclusions. (PR ¶¶ 1–4).

[10]    The alleged revisions include: categorizing underwriters in different departments based on seniority and loan time, compensating loan officers on an hourly basis, permitting and paying overtime, changing bonus structures, and requiring time-keeping. (DSOF ¶ 8 (citing Schild Decl. ¶ 4)).

[11]    One signature block to the contract, presumably, that of the underwriter employee, has been redacted while the signature on behalf of REMN is visible. (Sample Agrmt. p. 4).

arbitration clauses.

Thompson finds the timing suspicious, and urges that the arbitration agreements be invalidated because they interfered with the employees' rights in this (then) recently-filed FLSA collective action. Thompson asserts that the Defendants have produced no records to support the allegedly innocent explanations for the timing and content of the new underwriter compensation agreements. (PR ¶¶ 5–9).[12] Further, Thompson points out that she has yet to take any depositions. (*Id.*).

The process by which Defendants, in September 2014, first revealed the existence of the arbitration agreements is discussed *infra*.

## II.    DISCUSSION

### A.    Legal standards

#### 1.    Summary judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.P. 56(a); *see also Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to

---

[12]    Plaintiff also argues that if the Defendants had been in possession of such records, they would have produced them. (PR ¶¶ 5–9). The Court will not engage in such speculation, and, as Plaintiff herself has highlighted, discovery is still ongoing. (*Id.*).

9

the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

In deciding a motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S. Ct. 2505,

2513, 91 L. Ed. 2d 202 (1986). That "evidentiary burden" is discussed in the following section.

## 2. Motion to compel arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, creates a strong federal policy in favor of arbitration. *See Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178-79 (3d Cir. 1999) (noting that FAA "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes.").[13] To achieve that aim, the FAA authorizes a party to enforce a valid arbitration agreement by moving to compel arbitration. 9 U.S.C. §§ 2-4; *In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109, 116 (3d Cir. 2012).

Arbitration is a matter of contract between parties, so a judicial mandate to arbitrate must be predicated on the parties' consent. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)). When a district court is presented with a motion to compel arbitration, the Court must first determine whether the agreement to arbitrate is valid, and then decide whether the dispute falls within the agreement's scope. *Century Indem. Co. v. Certain Underwriters at Lloyd's,* 584 F.3d 513, 523 (3d Cir. 2009).

In assessing a motion to compel arbitration, the court applies the same summary judgment standard described above. *ACE Am. Ins. Co. v. Guerriero*, 738 F. App'x 72, 77 (3d Cir. 2018). Thus, arbitration will be compelled if the arbitrability issue presents no genuine, material issues of fact, with "[t]he party opposing arbitration ... given the benefit of all reasonable doubts and inferences that may arise." *Id.* (quoting *Kaneff v. Del. Title Loans*, 587 F.3d 616, 620 (3d Cir. 2009)). If, on the other hand, there are material factual disputes regarding arbitrability, the court should proceed to trial "regarding 'the making

---

[13]     The FAA's purpose is "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24, 111 S. Ct. 1647 (1991).

of the arbitration agreement or the failure, neglect, or refusal to perform the same,' as Section 4 of the FAA envisions." *Id.* (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F.Supp.2d 474, 482 (E.D. Pa. 2011)).

## B. Analysis

The first motion before me is that of the Defendants to compel arbitration. Because I find that Defendants have waived arbitration, I do not reach the parties' arguments as to the formation and interpretation of the arbitration agreements in dispute. The second motion before me is the Defendants' motion for partial summary judgment dismissing the opt-ins' claims on statute of limitations grounds. In response, Plaintiff has filed a motion for equitable tolling. I will grant in part Plaintiff's motion for equitable tolling as to the current opt-in Plaintiffs, but I will deny the motion as to the absent members of the putative, as-yet-uncertified class.

### 1. Waiver of the right to enforce arbitration

Plaintiff asserts that Defendants have waived their right to enforce arbitration. Given the strong preference to enforce arbitration agreements, *see Harris*, 183 F.3d at 178–179, waiver of the right to enforce arbitration will not be inferred lightly. *Nino v. Jewelry Exch., Inc.,* 609 F.3d 191, 208 (3d Cir.2010). Typically, waiver will be found only when "the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." *Id.* at 208 (internal citations omitted). However, if a party acts "inconsistently with the right to arbitration, [the court] will not hesitate to hold that the right to arbitrate has been waived where a sufficient showing of prejudice has been made by the party seeking to avoid arbitration." *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d 109, 117 (3d Cir. 2012).

The court considers six nonexclusive factors, known as the *Hoxworth* factors, when determining whether a party has waived the right to arbitrate. *Gray Holdco v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011) (citing *Hoxworth v. Blinder, Robinson & Co., Inc.,* 980 F.2d 912, 926–27 (3d Cir.1992)). Those *Hoxworth* factors are: (1) "timeliness or lack thereof of the motion to arbitrate;"

12

(2) "extent to which the party seeking arbitration has contested the merits of the opposing party's claims;" (3) "whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings;" (4) "the extent to which a party seeking arbitration engaged in non-merits motion practice;" (5) "the party's acquiescence to the court's pretrial orders;" and (6) "the extent to which the parties have engaged in discovery." *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d 109, 117 (3d Cir. 2012) (citing *Gray Holdco*, 654 F.3d at 451). "The factors, however, are 'nonexclusive' and 'not all the factors need be present to justify a finding of waiver.'" *Id.* at 118 (quoting *Nino*, 609 F.3d at 209).

### i. Timeliness

I begin with the *Hoxworth* factor of timeliness. When the party's motion to compel arbitration occurred in a reasonably timely fashion, this factor weighs against waiver. *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 598 (3d Cir.2004) (38 days); *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 10669 (3d Cir.1995) (two months); *Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 680 (3d Cir.2000) (one-and-a-half months); *Gavlik Constr. Co. v. H.F. Campbell Co.*, 526 F.2d 777, 783–84 (3d Cir.1975) (immediately after removal to federal court). Where, on the other hand, a motion to compel arbitration is significantly delayed, the Third Circuit has found a waiver. *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d at 118 (ten months); *Gray Holdco*, 654 F.3d at 454 (ten months); *Hoxworth*, 980 F.2d at 925 (11 months); *Nino*, 609 F.3d at 210 (15 months); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 223 (3d Cir.2007) (four years). The court may consider, not just the length of the delay, but whether there is a satisfactory explanation for it. *See In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d at 118.

Defendants, who alone possess the pertinent facts, did not assert arbitration as a defense, and indeed never raised the subject at all until September 2014. The Defendants first filed a motion to compel arbitration on

February 16, 2018 (DE 212), nearly seven years after this litigation was first filed. (*see* DE 1) (filing the first complaint on March 16, 2011). That is years beyond the point at which the Third Circuit has previously found significant delay justifying a finding of waiver.

To explain the delay, Defendants note that Thompson herself has no arbitration agreement, having left the job in advance of the restructuring pursuant to which arbitration clauses were inserted in the employment agreements. Thus they assert that, "[p]rior to opt-in Plaintiffs McCourt and Pietryka joining this action, there were no live claims by plaintiffs with arbitration agreements and no question of arbitrability for this court to resolve." (DE 226 p. 2) Before that time, they say, the Court could not have written anything but an impermissible advisory opinion on an absent, putative class member. (*Id.* p. 3). Defendants therefore urge the Court to measure the timing of the motion to compel arbitration not from the date the action was filed, but from the date the first plaintiff with an arbitration agreement opted in. (DE 226 p. 4). Measured from that point, they say, the delay was only seven weeks. (*See* Opt-in McCourt's notice of consent, DE 202; Opt-in Pietryka's notice of consent, DE 203; Defendants' First Motion to Compel Arbitration, DE 212).

Defendants' contentions have significant force, but I cannot accept them as a complete excuse. This action is and always was conceived of as a collective action. Defendants' protestations that their hands were tied as to an actual motion to compel arbitration takes them only so far; it does not explain their complete silence on the issue until 2014.

In addition, the plaintiffs have raised an issue of fact as to the timing of the arbitration agreements. The timing, they say, is suspicious; the rollout of the new contracts containing the arbitration provisions occurred immediately after the filing of this collective action FLSA complaint, and did not inform the employees they might be signing away their right to opt in. The Defendants, to be sure, have a contrary story to tell: the rollout, they say, was pursued in good faith, and had been in the works for some time.

14

The seven-year delay, then—and particularly the three-year delay from 2010 until the Defendants first raised the subject of arbitration in 2014—is significant. Still, I must agree with Defendants that the significance is substantially reduced in light of the fact that they could not have brought a motion to compel arbitration until more recently.

### ii. Alerting adversary to arbitration provision

I jump ahead to factor three: whether the Defendants informed their adversary of the right to pursue arbitration prior to filing the motion to compel. Here, the court will consider whether the party raised arbitration as a defense in their answer or elsewhere. *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d 109, 1119 (3d Cir. 2012). In this case, a collective action, the factor weighs heavier than timeliness because, ripeness aside, the defendants are the parties with knowledge and control over the facts about whether the claims of the putative class members are arbitrable.

The Defendants' current protestations have a certain *faux* quality. The status and viability of claims against the potential class members has been of vital concern to the defendants from the very outset of this action.

Defendants' motion to dismiss the amended complaint, for example, filed on February 24, 2012, sought to dismiss the collective action because Thompson's claims were not representative or typical of those of the putative class members, whose claims were fact-dependent and would require individualized scrutiny. (Brief in support of motion to dismiss, DE 28-1, pp. 12–18). Defendants had recently undergone a massive restructuring of employment-related agreements, in which arbitration provisions were inserted. But not a peep about arbitration here.

Apparently a period of mediation followed. Such negotiations would naturally include an assessment of the strengths and weaknesses of the case as a collective action. Here, too, the subject of arbitration apparently never came up.

Instead, the Defendants held the arbitration issue in reserve. They knew very well, however, that the arbitration agreements existed and that they would

be asserting them in opposition to class certification. The parties agree that the Defendants first flagged the existence of arbitration agreements on September 15, 2014. (DE 226 p. 5; DE 214 p. 10). On the eve of a conference before the Magistrate Judge, Defendants floated an argument that certification-related discovery should be limited, because the putative class members had signed arbitration agreements and therefore would not be part of any certified class.

A similar scenario played out in relation to the issue of equitable tolling. The issue of equitable tolling of putative class members' claims was first raised in a motion by plaintiff filed on June 30, 2012. (DE 35). Defendants' response had much to say about the status of those putative class members, but said nothing about their having signed arbitration agreements. In October 2014, it turned out that the now-revealed arbitration provisions would be relevant to Plaintiff's motions for equitable tolling. (*See* Tr. of Conference, DE 67, *passim*. *See also* renewed motion for equitable tolling, DE 70; response, DE 75).[14]

I agree with Magistrate Judge Hammer that an actual motion to compel arbitration was not yet ripe at that point. I also agree with Judge Hammer, however, that Defendants behaved opportunistically. (*See* Tr. of conference, DE 67 pp. 18:24–25, 19:1–2 ("You can't have it both ways where there's no mention made of the arbitration provision until three years into a case, and now it's being used as both a sword and a shield.")).

In short, from 2011 to the fall of 2014, Defendants never raised the arbitration agreements— not in their motions to dismiss, (DE 9, 28), not in their previous response to Plaintiff's motion for equitable tolling, (DE 35), not in their answer to the amended complaint, (DE 49), not in their motion for judgment on the pleadings, (DE 52), and not in any letters or discussions with

---

[14]    Plaintiff suggested, among other things, that the (unrevealed) arbitration agreements, entered after the filing of this collective action, would have led the potential opt-ins to believe they could not opt to assert their rights in federal court. This, in plaintiff's view, interfered with those employees' rights in the collective action and required invalidation of the arbitration agreements. (DE 70) Magistrate Judge Hammer denied the motion without prejudice, finding that it would more appropriately be resolved after discovery, in the context of the anticipated motion for class certification. (DE 108)

their adversary or the Court. In the meanwhile, the case was vigorously litigated, both in this court and the Court of Appeals. All the while, the Defendants knew dozens of potential opt-ins had arbitration agreements, but failed to mention that fact to Plaintiff or the Court until they found it convenient as a matter of litigation strategy.

This factor weighs significantly against the Defendants.

### iii. Extent to which Defendants contested the merits

Coming back to factor two, I consider the extent to which the Defendants contested the merits of the Plaintiff's claim. Here, the Defendants have filed a motion to dismiss, (DE 9), a second motion to dismiss, (DE 28), a Third Circuit appeal (DE 47), a motion for judgment on the pleadings (DE 52), and a third "motion to dismiss" (considered a motion for judgment on the pleadings) (DE 127, 152).

In effect, Defendants have required the Plaintiff to extend "substantial amounts of time, effort, and money in prosecuting" issues that would potentially have been mooted or transformed by the timely disclosure of the arbitration agreements. *Nino*, 609 F.3d at 212 (quoting *Hoxworth*, 980 F.2d at 926). Defendants may assert that they were merely filing proper motions and that they bear no responsibility for the late appearance of opt-ins. Defendants did, however, set up additional procedural obstacles to the participation of opt-ins, while back-pocketing the arbitration issue. (DE 162). Courts have found waiver based on much less substantial motion practice than this. *See e.g., Nino*, 609 F.3d at 210–11 (no motions on the merits); *Hoxworth*, 980 F.2d at 925–26 (motion to dismiss for failure to state a claim, and opposition to motion for class certification).

This factor weighs against Defendants.

### iv. Extent of non-merits motion practice

Moving to the fourth factor, I consider the extent to which Defendants engaged in non-merits motion practice. First, as discussed *supra*, Defendants appealed Magistrate Judge Hammer's discovery order that the Defendants

provide the Plaintiff with the contact information, job title, dates of employment, company name and work location of any and all underwriters, closers, and HUD reviews in Georgia and New Jersey. (DE 161, 162). Further, Defendants requested and obtained permission to depose the named Plaintiff, along with opt-ins, in advance of Plaintiff's briefing on a motion for conditional certification. (DE 184). For the very substantial delays in this action, there is surely blame to go around. But I focus here on the Defendants' actions, which tended to string out issues *seriatim* and delay the notification of potential opt-ins.

I do not say that Defendants' conduct has been abusive or extreme. They have not engaged in, for example, dilatory motions to disqualify counsel and the like. *Compare Hoxworth*, 980 F.2d at 925–26 (finding waiver when the party filed motions to disqualify counsel and stay discovery, and opposed motions to compel discovery), *with Palcko*, 372 F.3d at 598 (finding no waiver in the absence of any non-merits motions). Nevertheless, the fourth factor "is not an absolute requirement," and the Third Circuit has found waiver "even where no significant non-merits motion practice occurred." *In re Pharmacy Ben. Managers Antitrust Lit.*, 700 F.3d at 119.

On balance, this factor weighs somewhat against Defendants, although I would not find it dispositive in isolation.

### v.     Acquiescence to pre-trial orders

Continuing to the fifth factor, I consider the party's acquiescence in pre-trial orders. Generally, cases in which the Third Circuit has found no waiver, the cases "were not litigated long enough to feature any acquiescence in pretrial orders." *Id.* (citing *PaineWebber*, 61 F.3d at 1065; *Gavlik*, 526 F.2d at 783–84. *But see Wood*, 207 F.3d at 680 (finding no waiver even where the court had already filed a joint discovery plan). The Third Circuit has considered orders setting hearings on motions to dismiss and instructions regarding discovery plans to weigh against the moving party on this factor. *Id.* at 119–120. Here, the Defendants, without raising the bar of arbitration, have litigated

the case under the parameters set by pretrial orders (*see e.g.,* DE 55 (ordering, among other things, fact discovery to be complete by the end of January 2015)), and have engaged in status conferences (*see e.g.,* DE 50, 55).

This factor is mildly adverse to Defendants.

### vi. Extent of discovery

The sixth and final factor concerns the extent to which the parties have engaged in discovery. In the recent past, it was uniform that cases finding waiver featured "significant discovery activity in the district court." *In re Pharmacy Ben. Managers Antitrust Lit.,* 700 F.3d at 120; *see also, e.g., Hoxworth,* 980 F.2d at 925–26 (finding waiver when the parties engaged in several depositions, answered several discovery requests, and litigated discovery disputes). That being said, the Third Circuit has found waiver even when no discovery at all had taken place. *In re Pharmacy Ben. Managers Antitrust Litig.,* 700 F.3d at 121.

Here, discovery has been meaningful. (*See* DE 124, 126, 141 (orders compelling discovery)). Defendants have resisted discovery—for example, appealing Magistrate Judge Hammer's discretionary order requiring them to supply basic information, such as the names and contact information for the potential opt-ins, *see supra.* (DE 182, 184). Defendants also sought and were granted leave to depose three plaintiffs in advance of certification. (DE 184). Thus, this final factor also weighs against Defendants, who knowingly required the Plaintiff (and the Court) to devote time, effort and money to discovery in advance of certification.

### vii. Weighing the factors

In sum, weighing all of the factors, I reach the conclusion that Defendants have waived the right to compel arbitration. The "purpose behind arbitration itself" is to "streamline the proceedings, lower costs, and conserve private and judicial resources," *Nino,* 609 F.3d at 209, a goal which has been frustrated here. Having found waiver, I do not reach the parties' arguments on the enforceability of the terms of the arbitration agreements.

## 2. Equitable tolling and the statute of limitations

As noted above, this matter still has not been certified as a collective action, and formal notification of potential claimants has not occurred. Nevertheless, some seven employees have learned of this litigation and have elected to opt in.

Defendants move for summary judgment, arguing that the opt-ins' claims are wholly or partially time-barred. (DE 223). In response, Plaintiff has filed an opposition and cross-moved for equitable tolling for all current and putative opt-in members from May 6, 2011, the date the Defendants filed their first motion to dismiss, until the date the Court rules on the Plaintiff's motion for conditional certification. (DE 224). In support, Plaintiff asserts that the delay was caused by Defendants' failed motion practice and the fact that Defendants actively misled Plaintiff regarding the arbitration agreements. Albeit for different reasons, I will in part grant Plaintiff's motion for equitable tolling.

### i. The FLSA statute of limitations

An FLSA claim must be commenced within two years after accrual[15] (three years in the case of a willful violation). 29 U.S.C. § 255(a). When a named plaintiff files the collective action complaint, that plaintiff's claim is deemed commenced. *Depalma v. Scotts Co. LLC*, Civ. No. 13-7740, 2017 WL 1243134, at *2 (D.N.J. Jan. 20, 2017). However, an opt-in plaintiff's claim is deemed commenced only later, when her written consent is filed. *Id.* (citing 29 U.S.C. § 256(a)-(b)). Thus, if a potential opt-in plaintiff has not received notice of an action, that person may be unaware of her right to halt the running of the statute of limitations by opting in. Thus the statute of limitations, unless tolled, may operate to bar such a person's claim.

---

[15] A claim for unpaid overtime accrues each and every time the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends. 29 C.F.R. § 790.21(b); *Henchy v. City of Absecon*, 148 F. Supp. 2d 435, 437 (D.N.J. 2001).

Ordinarily, the statute of limitations begins to run "once [the] events satisfying all elements of a cause of action have taken place." *William A. Graham Co. v. Haughey*, 646 F.3d 128, 147 (3d Cir. 2011). "There exist, however, various statutory and judge-made rules that operate to toll the limitations period—that is, 'to stop its running'; 'to abate it'; or '[t]o suspend or interrupt' it." *Id.* (internal citations omitted). *Id.* One of those judge-made rules, equitable tolling, "can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has 'been prevented from filing in a timely manner due to sufficiently inequitable circumstances.'" *Santos v. United States*, 559 F.3d 189, 198 (3d Cir. 2009) (citing *Seitzinger v. Reading Hosp. & Med. Ctr.* 165 F.3d 236, 240 (3d Cir. 1999)).

### ii.   Application of statute of limitations

Here, the seven current opt-in Plaintiffs all filed their notices of consent on December 28, 2017. (DSOF ¶ 13, 198–204). That implies that (for a violation not found to be willful) their claims may encompass no more than the two-year limitations period—*i.e.,* they will be barred as to claims accruing before December 28, 2015.[16] *See* 29 U.S.C. § 255. The claims of five opt-in Plaintiffs, Sentman, Galida, Jones, McCourt, and Haines, fall outside the limitations period; they all ended their employment before December 2014. (*See* DSOF ¶¶ 13–17, 19) (listing employment dates).[17] The two remaining opt-in Plaintiffs, Arraya and Peitryka, remained employed within the limitations period, but some portion of their claims may have arisen before December 28, 2015. (*Id.* ¶¶ 20, 23) (listing Arraya as having been employed for Defendants until December

---

[16]     In the case of a willful violation, the claims might date back an additional year to December 28, 2014, *see* 29 U.S.C. § 255. Plaintiff appears to concede, however, that the two-year statute applies, and the limitation date is December 28, 2015. (DE 224-1) ("Unless the statute of limitations is tolled, the only employee who could obtain FLSA relief is plaintiff Patricia Thompson. The eight other opt-in plaintiffs now on file would get nothing.").

[17]     Defendants argue that opt-in plaintiff Arraya, who worked for the company from January 2008 to December 2016, and opt-in Peitryka, who worked for the company from May 2014 to February 2017, may have timely claims, but that any such claims should be dismissed because they were properly paid overtime during that period. (DE 223 pp. 3, 8, 21). I will return to this argument after considering equitable tolling.

27, 2017 and Pietryka having been employed for Defendants until February 3, 2017). All that being said, if I were to grant equitable tolling, which in this instance I shall, then the opt-in Plaintiffs might bring claims that would otherwise be wholly or partly time-barred. *See infra.*

### iii. Equitable tolling

Under the usual rules of equitable tolling, a plaintiff must establish two elements: (1) "that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuilielmo*, 554 U.S. 408. 418 (2005). While equitable tolling is an "extraordinary" remedy to be used "only sparingly," *Santos*, at 197, tolling relief has been found proper in several situations. *See, e.g., Seitzinger*, 165 F.3d at 242 (tolling may be appropriate in some instances of attorney neglect, "when a claimant received inadequate notice of her right to file suit, [or] where a motion for appointment of counsel is pending").

There are three classic, but nonexclusive, scenarios in which the inequity of enforcing a statute of limitations against an unwary plaintiff is so obvious that tolling may be appropriate: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Id.* (quoting *Hedges v. United*, 404 F.3d 744, 751 (3d Cir. 2005)); *see also Santos*, 559 F.3d at 197; *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999). Equity, however, is flexible, and the list is not exhaustive. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994) ("We have instructed that there are *three principal, though not exclusive, situations in which equitable tolling may be appropriate:* [reciting the three situations].") (emphasis added). Whether a statute of limitations should be tolled requires a case-specific inquiry into what is fair and in the interests of justice. *See Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir. 1988) (equitable tolling is proper when "the principles of equity would make [the] rigid

application [of a limitation period] unfair") (alterations in original); *Jones*, 195 F.3d at 159 ("In the final analysis ... 'a statute of limitations should be tolled in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice.'") (quoting *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998).

### iv.    Application of equitable tolling

I consider the facts of this case as a whole, in light of equity and the interests of justice. I am presented with a plaintiff who did not file for conditional certification until six years and nine months after the complaint was initially filed. (DE 196). It was just two weeks after the Plaintiff filed for conditional certification, however, that the opt-in Plaintiffs joined in. (DE 198–204). Defendants, with cause, point out that a great deal of time has elapsed since the action was first filed. In the Court's experience, conditional certification in the general run of FLSA cases has not been a cumbersome or protracted process. Defendants, however, have aggressively defended the case. They have attacked the case of the named plaintiff *via* multiple motions to dismiss, and it required a lengthy sojourn in the Third Circuit to reverse Judge Cavanaugh's grant of the second of those motions. The Defendants have thrown up procedural roadblocks to conditional certification, part of which, as detailed above, involved the withholding of information about putative class members' arbitration agreements.

Plaintiff is not without fault here. There is reason to question whether counsel pursued the case with maximum diligence. At least one motion—a pettifogging application to "strike" certain of Defendants' motions because they were brought on a standalone basis, rather than as cross-motions—had the effect, if not the intent, of needless delay. I would also be remiss if I did not shoulder some of the blame on behalf of this overburdened district judge and his predecessor. None of these considerations, however, persuade me that innocent third parties, current or potential opt-ins, should be denied equitable tolling and their day in court.

I find this case comparable to a previous case before this Court, *Depalma v. Scotts Co. LLC*, in which the defendants appealed a magistrate judge's order granting equitable tolling. Civ. No. 13-7740, 2017 WL 1243134, at *7 (D.N.J. Jan. 20, 2017). "Viewing the case as a whole," I granted equitable tolling based on the following procedural history:

> [T]he picture that emerges is a case delayed somewhat by unavoidable transfers among district judges and magistrate; an early three month delay at Scotts' request; commencement of pre-certification discovery without any evident dilatory conduct; the prompt filing of a motion for conditional certification two months after the close of that discovery; and, nine months later, the plaintiffs' filing of a motion for equitable tolling as the statute of limitations loomed. Nothing about that procedural history suggests that plaintiffs have prosecuted this case with a lack of diligence or without an eye towards protecting the rights of the opt-in plaintiffs.

*Depalma*, 2017 WL 1243134 at *7.

Here, as in *Depalma*, I trace the delay to several sources. As already outlined above, the Defendants have engaged in substantial pre-certification motion practice. (*See e.g.*, DE 9, 28, 52, 162). Two motions to dismiss occupied the docket for over a year. (DE 9, 39). An appeal to the Third Circuit occupied another year and a half. (DE 40, 44) On remand, after the case was reassigned to me and to a new Magistrate Judge, neither of us familiar with the case. The Plaintiff attempted without success to obtain equitable tolling, but the motion was found to be premature. (DE 35). A third motion directed to the pleadings ensued. (DE 52, 106). During that same period, the Plaintiff (having learned of the arbitration agreements in the interim) filed another motion to toll the statute of limitations. (DE 70, 108). Later, while the parties were engaged in pre-certification discovery (*see e.g.*, DE p. 14:1–16), the Defendants engaged in additional motion practice that delayed Plaintiff's ability to file for conditional certification. (*See e.g.*, Appeal of Magistrate Judge Hammer's Discovery Order, DE 162).

Further, I note that the Defendants waited three years and six months before even mentioning that the opt-ins may be subject to an arbitration

provision, and during that time the parties engaged in settlement discussions. The court's views on that aspect are stated above. *See* I.B.2.ii.

Plaintiff has made several other arguments for equitable tolling, including one that the Defendants have actively misled the Plaintiff. (DE 224-1 pp. 15–18). The largely uncontested procedural facts being sufficient for present purposes, I will not consider these unproven accusations at the present time.

On the whole, I will not blame the entirety of this mess on the Defendants; judicial error played a part, as did the Plaintiff's pokiness in filing its motion for conditional certification. Plaintiff has acted perhaps not perfectly, but diligently enough, and has attempted to preserve this tolling issue since fourteen months after the action was first filed. (DE 35). Viewing the history as a whole, I find that it is in the interest of justice to grant Plaintiff's motion for equitable tolling for the opt-in plaintiffs.

I will therefore grant Plaintiff's motion for equitable tolling as to the opt-ins who have already joined this action. The period of tolling shall be deemed to begin as of July 30, 2012, the date that the Plaintiff first filed a motion for equitable tolling. (DE 35). That display of initiative was derailed by rulings of the Court to the effect that the motion was premature, but I think it was sufficient to establish an equitable date for tolling to commence. It would not be equitable, I find, to rule that a tolling motion was too early until it was too late.[18]

---

[18] Plaintiff seeks equitable tolling for the period beginning May 6, 2011, the date that Defendants first filed their motion to dismiss. (DE 224; *see also* DE 9). (Plaintiff also suggests her brief that tolling should being as of the date she filed the original complaint.) (DE 224-1, p. 19). Defendants, on the other hand, argue that equitable tolling should date only from December 12, 2017, when Plaintiff first filed for conditional certification. (DE 223 p. 17; *see also* DE 196). Plaintiff's counsel "intentionally and consciously chose to wait to file her motion [for conditional certification], focusing instead on collection claims by time and type over the years." (DE 223, p. 18). I find insufficient indication that Plaintiff or her counsel acted so improperly or inequitably as to defeat tolling.

Plaintiff also argues that equitable tolling should apply not only to existing opt-ins, but also to potential opt-ins who might join after certification. (DE 224). As I have said in the past (DE 108), I will not write an advisory opinion on that speculative basis.

The period of tolling shall run until further order of the Court. Most likely, that will occur upon conditional certification (if granted) and a reasonable period thereafter for notification and submission of opt-in claims.

### 3. Miscellaneous arguments

First, in tidbits sprinkled throughout their briefing, Defendants argue that Arraya's claim in particular must be dismissed. (DE 223, pp. 3, 8, n. 9, 21). Defendants' argument, however, is addressed to the more recent claims and requires the assumption that equitable tolling would not apply. (*See id.* p. 21). I therefore deny summary judgment as to opt-in Arraya.

Second, as to opt-ins Pietryka and McCourt, Defendants argue that overtime was properly paid during the limitations period. (*Id.* pp. 27–28). Again, the application of equitable tolling subverts that argument, and I will deny summary judgment on this basis.

## III. CONCLUSION

For the reasons set forth above, Defendants' motion (DE 223) for summary judgment and to compel arbitration is DENIED.

Plaintiff's motion for equitable tolling (DE 224) is GRANTED in part. The statute of limitations is tolled for current opt-ins starting from July 30, 2012, until further order of the court. It is otherwise denied.

An appropriate order follows.

Dated: June 26, 2019

**Hon. Kevin McNulty**
**United States District Judge**