# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

PATRICIA THOMPSON, on behalf of herself
and all others similarly situated,

Plaintiff,

- against -

REAL ESTATE MORTGAGE NETWORK,
INC., SECURITY ATLANTIC MORTGAGE
COMPANY, INC., NOEL CHAPMAN, an
Individual and SAMUEL LAMPARELLO, an
Individual,

Defendants.

Civil Action No. 11-CV-01494 (KM) (MAH)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR:**
**(1) CONDITIONAL COLLECTIVE ACTION CERTIFICATION;**
**(2) COURT AUTHORIZED NOTICE; AND**
**(3) EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS**

LAW OFFICES OF MITCHELL SCHLEY, LLC
197 Route 18, Suite 3000
East Brunswick, NJ 08816
(732) 325-0318

ABBEY SPANIER, LLP
212 East 39th Street
New York, New York 10016
(212) 889-3700

*Attorneys for plaintiff Patricia Thompson*
*individually and on behalf of all other persons*
*similarly situated*

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................ ii

Index of Declarations and Accompanying Exhibits .................................. v

PRELIMINARY STATEMENT ........................................................... 1

STATEMENT OF THE CASE ............................................................ 1

STATEMENT OF FACTS .............................................................. 2

LEGAL ARGUMENT ................................................................... 7

    I.    CONDITIONAL CERTIFICATION SHOULD BE GRANTED BECAUSE THE PLAINTIFF AND THE PROPOSED CLASS ARE SIMILARLY SITUATED ............................................... 7

        A.    There is a Presumption that Plaintiffs are Entitled to the Minimum Wage and Overtime Compensation ........................... 7

        B.    The Purposes of the FLSA are Served by Granting Conditional Certification Here ..................................... 8

        C.    Plaintiff has a Minimal and Lenient Burden at This Stage .......... 8

    II.    THE FLSA STATUTE OF LIMITATIONS SHOULD BE TOLLED FOR THE PUTATIVE OPT-IN PLAINTIFFS BECAUSE NOTICE HAS BEEN DELAYED IN THIS ACTION ........................................ 13

    III.    THE COURT SHOULD AUTHORIZE JUDICIAL NOTICE ............... 13

        A.    Judicial Notice is Warranted ................................. 13

        B.    Plaintiff's Proposed Notice is Accurate and Informative ........ 14

    IV.    THE COURT SHOULD COMPEL DEFENDANTS TO PRODUCE THE NAMES AND CONTACT INFORMATION FOR ALL PUTATIVE MEMBERS OF THE COLLECTIVE ...................................... 16

CONCLUSION ..................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Andrienko v. United States Steel Corp.,*
   788 F.Supp. 2d. 372 (W.D.Pa. 2011) ................................................................ 12

*Bland v. PNC Bank N.A.,*
   2015 U.S. Dist. LEXIS 15979 (W.D.Pa. 2015) ................................................ 12

*Colosimo v. Flagship Resort Dev. Corp.,*
   2019 U.S. Dist. LEXIS (D.N.J. 2019) ............................................................... 14

*Davis v. J.P. Morgan Chase & Co.,*
   587 F.3d 529 (2d. Cir 2009) ........................................................................ 11, 14

*Depalma v. The Scotts Co. LLC,*
   2016 U.S. Dist. LEXIS 187529 (D.N.J. March 31, 2016) (McNulty, J.) ........... 9, 16

*Depalma v. The Scotts Co., LLC,*
   2019 U.S. Dist. LEXIS 97036 (D.N.J. 2019)( McNulty, J.) ............................... 11

*Elizabeth Relyea v. Carvan, Calahan and Ingham, L.L.P.,*
   2006 U.S. Dist. LEXIS 63351 (E.D.N.Y. 2006) ............................................... 11

*Gervasio v. Wawa, Inc.,*
   2018 U.S. Dist. LEXIS 4899 (D.N.J. 2018) ...................................................... 15

*Herring v. Hewitt Assocs., Inc.,*
   No. CIV. 06-267 (GEB), 2007 WL 2121693 (D.N.J. July 24, 2007) .................. 8

*Hoffman-La Roche, Inc. v. Sperling,*
   493 U.S. 165 (1989) ........................................................................ 8, 13, 14, 16

*Keller v. T.D. Bank, N.A.,*
   2014 U.S. Dist. LEXIS 155889 (E.D.Pa. 2014) ............................................... 12

*Lutz v. Huntington Bancshares, Inc.,*
   815 F.3d 988 (6th Cir. 2016) (White, J., dissenting), cert. denied, 2016 U.S. LEXIS 4613
   (2016) .............................................................................................................. 11

*McKeen-Chaplin v. Provident Savings Bank,*
   862 F.3d 847 (9th Cir. 2017), cert. denied, Case No. 17-731 (Nov. 27, 2017) ..... 11

*Morisky v. Pub. Sev. Elec. & Gas Co.,*
   111 F. Supp. 2d 493 (D.N.J. 2000) .................................................................. 8

*Moss v. Crawford & Co.*,
201 F.R.D. 398 (W.D.Pa. 2000) ........................................................................... 12

*Ornelas v. Hooper Holmes, Inc.*,
2014 U.S. Dist. LEXIS 172903 (D.N.J. 2014), *affirmed,* 2014 U.S. Dist. LEXIS 172162
(D.N.J. 2014)............................................................................................... 14, 15

*Pearsall-Dineen v. Freedom Mortg. Corp.*,
27 F. Supp. 3d 567 (D.N.J. 2014) ......................................................................... 15

*Ritzer v. UBS Financial Services, Inc.*,
2008 U.S. Dist. LEXIS 71635 (D.N.J. 2008) ......................................................... 13

*Robles v. Vornado Realty Trust*,
2015 U.S. Dist. LEXIS 111038 (D.N.J. 2015) ....................................................... 12

*Soehnle v. Hess Corp.*,
399 F. App'x 749 (3d Cir. 2010) ............................................................................ 7

Talarico v. Public Partnerships,
2018 U.S. Dist LEXIS 140514 (E.D. Pa. 2018) ..................................................... 15

*Thompson v. Real Estate Mortgage Network, Inc.*,
106 F.Supp.3d 486 (D.N.J. 2015) (McNulty, J.) ..................................................... 7

*Thompson v. REMN*,
748 F.3d 142 (3d. Cir. 2014)................................................................................... 2

*Watts v. Silverton Mortg. Specialists, Inc.*,
2019 U.S. Dist. LEXIS 78841 (N.D.Ga. 2019) ..................................................... 11

*Zavala v. Wal-Mart Stores, Inc.*,
691 F.3d 527 (3d Cir. 2012)................................................................................... 9

## Statutes

29 C.F.R. § 778.103 ................................................................................................ 7

29 U.S.C. § 206(a) .................................................................................................. 7

29 U.S.C. § 207(a) .................................................................................................. 7

29 U.S.C. § 213(a)(i)............................................................................................. 11

29 U.S.C. § 216(b) .......................................................................................... 1, 7, 8

Fair Labor Standards Act, 29 U.S.C. § 201 ................................................................... 2

N.J.S.A. 34:11-56a ................................................................................................................ 2

N.J. Stat. Ann. § 34:11-56a25 ........................................................................................... 7

N.J. Stat. Ann. § 34:11-56a4 ............................................................................................. 7

**Index of Declarations and Accompanying Exhibits**
**Supporting Motion for Conditional Certification**

Declaration of Patricia Thompson (ECF 196-4)

A       Homebridge Website – Main page/about section
B       Homebridge Press Release
C       Key Department Heads slide
D       Press release, dated January 12, 2010, which announced the HUD investigation of SAMC
        is attached
E       Announcement by SAMC posted on its website on January 25, 2010, concerning its
        transition to REMN
F       HUD Office of Inspector General Summary regarding the investigation
G       Job posting for underwriter in Hackensack
H       REMN web page stating new files are same day for all underwriters
I       Fannie Mae News Release regarding eliminating fee for use of DU
J       Internal REMN job postings for the position of production wholesale underwriter and
        junior wholesale underwriter
K       REMN Monster.com job posting for position of junior mortgage underwriter
L       Uniform Residential Home Loan Application
M       Three emails from management acknowledging long hours
N       2 SAMC timesheets showing 40 hour scheme
O       Thompson acknowledgment of handbook

Declaration of Yasmin Arraya (ECF 196-20)

A       REMN job posting for a Closer/HUD Reviewer
B       HUD-1 form and a Closing Disclosure Form
C       REMN job posting for the position of Closing Disclosure Reviewer
D       Payroll records that show no entries under the column for overtime next to my name
        (Employee 337)
E       REMN Handbook
F       Homebridge Handbook

Declaration of Jonell Jones (ECF 196-27)

A       Payroll records that show no entries under the column for overtime next to my name
        (Employee 432).

Declaration of Kevin McCourt ECF 196-29)

None

## PRELIMINARY STATEMENT

Plaintiff Patricia Thompson ("plaintiff" or "Thompson"), individually and on behalf of all other persons similarly situated respectfully moves pursuant to 29 U.S.C. § 216(b) for: (i) conditional certification of a collective action; (ii) the issuance of Court-authorized notice to the conditional class members and production of up-to-date contact information; and (iii) equitable tolling of the statute of limitations with respect to the existing and prospective opt-in plaintiffs.

Plaintiff seeks conditional certification on behalf of herself and other similarly situated people as follows:

> All employees who work or worked as underwriters (including junior underwriters) and closers/HUD reviewers/Closing Disclosure reviewers for the defendants Security Atlantic Mortgage Company, Inc., Real Estate Mortgage Network, Inc. d/b/a Homebridge Financial Services in the State of New Jersey at any time since March 16, 2008, but excluding team leaders, supervisors, and managers, quality control underwriters, and help desk underwriters.[1,2,3,4,5]

## STATEMENT OF THE CASE

This case was brought as a class and collective action on behalf of all persons who work as underwriters and closers/HUD reviewers/Closing Disclosure reviewers (the "Collective") for the defendants Security Atlantic Mortgage Company, Inc. ("SAMC"), Real Estate Mortgage Network, Inc. d/b/a Homebridge Financial Services ("REMN"), Noel Chapman ("Chapman"), and Samuel Lamparello ("Lamparello") in the State of New Jersey at any time since March 16,

---

[1]   The collective described in the initial complaint included employees in Georgia. However, in light of the amount of time that has passed since the complaint was filed, it is no longer practical to include those employees. No Georgia employees have opted into the case.

[2]   No employee in the excluded positions has opted into the case.

[3]   The date of March 16, 2008 is three years prior to the filing of the complaint on March 16, 2011, in accordance with the FLSA statute of limitations. In this regard, see section concerning tolling *infra*.

[4]   On February 3, 2014, REMN announced that it had renamed itself as Homebridge Financial Services for marketing purposes. (Thompson Decl. Ex. B.) For simplicity, plaintiff will refer to Real Estate Mortgage Network, Inc. d/b/a Homebridge Financial Services as "REMN" herein.

[5]   The title of HUD reviewer was changed to Closing Disclosure reviewer. (Arraya Decl. at ¶ 2).

2008.[6] These employees alleged they regularly worked more than 40 hours in a workweek, but were not paid overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq. ("FLSA") and New Jersey State Wage and Hour Law, N.J.S.A. 34:11-56a et. seq. ("NJWHL").

The Amended Complaint alleges primary liability for SAMC's actions from three years prior to the filing of the initial complaint to February 2010 and primary liability for REMN's actions from February 2010 through entry of judgment. It also alleges that during the period when SAMC was the primary employer, REMN was the joint employer of these employees. In February 2010, SAMC transitioned into REMN, at which time it is alleged that REMN became the successor employer and liable for SAMC's previous alleged violations. It is alleged as well that Noel Chapman and Samuel Lamparello in their executive capacities are individually liable for the alleged violations.[7]

## STATEMENT OF FACTS

SAMC was a nationwide mortgage lender headquartered in Edison, New Jersey. (*See* Am. Compl. at ¶ 12; Thompson Decl. at ¶ 4).[8]   In February 2010, in response to a U.S. Department of Housing and Urban Development ("HUD") investigation into SAMC's mortgage practices, SAMC transitioned into REMN. (Thompson Decl. at ¶¶ 2, 9) At this time, SAMC employees were transferred to the REMN payroll and continued to do work already in progress,

---

[6]   With respect to discovery, defendants have taken the deposition of Patricia Thompson. Plaintiff has not taken any depositions. Defendants have answered plaintiff's interrogatories but limited their responses to the named plaintiff until the collective is conditionally certified. The parties have exchanged documents. Additional document discovery is needed.

[7]   As discussed in the Third Circuit's Opinion, issues that need to be decided are whether SAMC and REMN were joint employers, whether REMN is a successor of SAMC, and whether the individual defendants are personally liable for the alleged violations of the FLSA and NJWHL. *Thompson v. REMN*, 748 F.3d 142 (3d. Cir. 2014). These issues are beyond the scope of the instant motion for conditional certification and will be decided after the completion of discovery as part of a motion for summary judgment.

[8]   Attached as Exhibits A - D are the Declarations of Patricia Thompson ("Thompson Decl."), Yasmiin Arraya ("Arraya Decl."), Jonell Jones ("Jones Decl."), and Kevin McCourt ("McCourt Decl.). Thompson was an underwriter in Edison, McCourt an underwriter in River Edge, Arraya a closer/HUD reviewer/Closing Disclosure reviewer in Edison/Iselin, and Jones a HUD reviewer in Edison.

at the same location, with the same pay rate, under the same management and supervision, with the same terms and conditions of employment. (Thompson Decl. at ¶ 9). REMN is a nationwide direct mortgage lender with about 3,000 employees in about 250 branches.  (*See* Am. Compl. at ¶ 9; Thompson Decl. at ¶ 4). As noted above, REMN changed its name for marketing purposes to Homebridge Financial Services on February 3, 2014 REMN has two principal locations in New Jersey, Iselin (formerly Edison) (Thompson Decl. at ¶ 45) and Hackensack (formerly River Edge) (McCourt Decl. at ¶ 3).

Noel Chapman was a co-owner, Executive Vice President, and officer of SAMC. He supervised the day-to-day operations of SAMC. (Thompson Decl. at ¶ 5). Samuel Lamparello was a co-owner, President, and officer of SAMC. He supervised the day-to-day operations of REMN. (Thompson Decl. at ¶ 6). When SAMC became REMN, Chapman and Lamparello remained with REMN and both became officers of REMN. (Thompson Decl. at ¶¶ 5 - 7). Chapman and Lamparello continued to run the day-to-day operations of REMN. (Thompson Decl. at ¶ 11).

Plaintiff Patricia Thompson was hired by SAMC on June 8, 2008, as an underwriter and remained on SAMC's payroll until February 2010, when SAMC transferred the employees onto the REMN payroll. Thompson was transferred to REMN and remained on REMN's payroll until she resigned on August 5, 2010. (Thompson Decl. at ¶ 2). Thompson worked at the Edison, New Jersey location. (Thompson Decl. at ¶ 3). At the time SAMC transitioned its employees to the REMN payroll, SAMC employed over 50 employees in the Edison location, including about 20 underwriters, eight closers, and four HUD reviewers. (Thompson Decl. at ¶ 13). REMN also had a River Edge, New Jersey office with operations employees such as underwriters and closers. (Thompson Decl. at ¶ 15).

One of SAMC and REMN's main marketing promises, which it used to distinguish itself from the competition, was one-day underwriting turnaround completion. (Thompson Decl. at ¶¶ 16, 18). This caused plaintiff and the collective to regularly work large amounts of overtime to meet management's turnaround-time demands. (Thompson Decl. at ¶¶ 16-18). Plaintiff and the collective regularly worked more than 40 hours in a week. (Thompson Decl. at ¶¶ 16-17; Arraya Decl. at ¶ 7; Jones Decl. at ¶ 6; McCourt Decl.  at ¶ 6). SAMC and REMN did not pay plaintiff and the collective overtime pay for hours worked in excess of 40 in one week. (Thompson Decl. at ¶¶ 16, 17, 20; Arraya Decl. at ¶ 7; Jones Decl. at ¶ 6; McCourt Decl. at ¶ 8).

SAMC and REMN both engaged in a scheme to generate false time records for the collective. (Thompson Decl. at ¶¶ 41 - 42; Arraya Decl. at ¶ 11; Jones Decl. at ¶ 9). Thus, each week, management of SAMC and REMN had each employee initial a time sheet that had a *pre-printed* total of 40 hours regardless of the number of hours the employee actually worked that week. (Thompson Decl. at ¶ 41; Arraya Decl. at ¶ 11; Jones Decl. at ¶ 9). This created a false paper trail SAMC and REMN could use to "prove" that the collective was not working more than 40 hours each week, and thus avoid liability for overtime pay if challenged. (Thompson Decl. at ¶ 41; Arraya Decl. at ¶ 11; Jones Decl. at ¶ 9). At one point, when Patricia Thompson actually entered her real hours which exceeded 40, she was told by Chapman to change it because he did not pay overtime to underwriters. (Thompson Decl. ¶ 42). Immediately after this case was filed in 2011, REMN purportedly began to pay overtime to underwriters, closers, and HUD reviewers, but did not do so correctly. (Thompson Decl. at ¶ 40; Arraya Decl. at ¶ 12).

Thus, defendants were aware that plaintiff and the collective were working long hours, late nights, and even weekends. In fact, Noel Chapman and Peter Norden acknowledged this in three emails to REMN employees. (Thompson Decl. at ¶¶ 34 - 38).

For example, on June 30, 2010, Noel Chapman sent an email to *all* departments at REMN, which stated, "Lately all the maddening industry changes and this crazy deadline have forced all of us to work harder and deal **with even more stress than usual (and you thought that wasn't possible!)**." (Thompson Decl. Exhibit M). (Emphasis added.)

On July 1, 2010, Noel Chapman sent an email to *all* departments at REMN thanking the employees because, "So many of you **worked long hours, late nights and even weekends** to make sure that all REMN customers are happy customers." (Thompson Decl. Exhibit M). (Emphasis added.)

On July 2, 2010, Peter Norden, CEO, sent an email to *all* REMN employees thanking employees and stating that the business results, "could not have been accomplished without all the **hard work, dedication, and long hours** . . ." (Thompson Decl. Exhibit M). (Emphasis added.) In fact, overtime was such a common occurrence that SAMC and REMN provided the underwriters with **fireproof cases and rolling carts to take loan files home on evenings and weekends**, and underwriters could log into the computer system remotely to perform work after hours. (Thompson Decl. at ¶ 32).

At SAMC and REMN, all positions in the collective – underwriters, closers, HUD reviewers, and Closing Disclosure Reviewers – worked closely together in an assembly-line-type operation to process mortgage loan applications. (Thompson Decl. at ¶ 29). The process is as follows: A borrower completes a mortgage loan application, which is submitted to the lender (SAMC or REMN) either by the borrower directly, or indirectly through a mortgage broker. (Thompson Decl. at ¶ 29). Then, the loan processor enters the loan into a computer program called Encompass, which is used by all the employees along the assembly-line, including all job titles in the collective. (Thompson Decl. at ¶ 29). The loan application then goes to an

underwriter, who accesses the applicable government website such as the Federal Housing Authority (FHA), the Federal National Mortgage Administration (Fannie Mae), Federal Home Loan Mortgage Corporation (Freddie Mac), and the Government National Mortgage Association (Ginnie Mae), and enters the loan application information into the agency's mortgage underwriting web application. (Thompson Decl. at ¶ 30). For example, Fannie Mae uses a web application called Desktop Underwriter, or "DU."[9] This process is generally referred to as automated desktop underwriting, meaning computerized underwriting. (Thompson Decl. at ¶ 21).

Using the data the underwriter entered, the agency's web application either approves or disapproves the loan application. (Thompson Decl. at ¶ 30). Sometimes the agency's web application will indicate that the loan is approved subject to meeting a condition. (Thompson Decl. at ¶ 30). When the documents that fulfill the condition are received and entered into the web application by the underwriter, it designates the file as approved. (Thompson Decl. at ¶ 30).

The file then goes to the closing department where a closer and HUD reviewer prepare the closing documents, such as a HUD-1, a Good Faith Estimate (GFE), a Truth-in-Lending Disclosure (TILA), and closing instructions. (Thompson Decl. at ¶ 31). The closer emails these documents to the closing attorney or closing agent. (Thompson Decl. at ¶ 31). Plaintiff and the collective considered and referred to the whole process as a team effort. (Thompson Decl. at ¶ 31). In general, all employees working on a particular mortgage application work in the same office. (Thompson Decl. at ¶ 31). In some cases, an underwriter may work in a different location than the rest of the team or be working from home, but because the process is managed using the Encompass program and the agency's web application, the team can work together as effectively as if they were located in the same office. (Thompson Decl. at ¶ 31). In April 2013 the FHA

---

[9]    *See* the Fannie Mae Desktop Underwriter website, at https://www.fanniemae.com/singlefamily/desktop-underwriter.

changed the name of the HUD-1 to the Closing Disclosure form (Arraya Decl. at ¶ 2) and the job title of HUD reviewer was changed to Closing Disclosure reviewer.

## LEGAL ARGUMENT

**I.    CONDITIONAL CERTIFICATION SHOULD BE GRANTED BECAUSE THE PLAINTIFF AND THE PROPOSED CLASS ARE SIMILARLY SITUATED**

### A.    There is a Presumption that Plaintiffs are Entitled to the Minimum Wage and Overtime Compensation

The FLSA and NJWHL require that every employer pay every employee a minimum wage for every hour worked.  *See* 29 U.S.C. § 206(a) ("Every employer shall pay to each of his employees who in any workweek is engaged in commerce . . .  wages at the following rates."); N.J. Stat. Ann. § 34:11-56a4 (West). For violations of the FLSA and NJWHL, the laws entitle employees to bring private rights of action to recover damages in court.  *See* 29 U.S.C. § 216(b); N.J. Stat. Ann. § 34:11-56a25 (West).

Section 7(a) of the FLSA sets forth the general requirement that employees must be paid overtime compensation for hours worked in excess of 40 hours per week.  29 U.S.C. § 207(a); *see also* 29 C.F.R. § 778.103; *Soehnle v. Hess Corp.*, 399 F. App'x 749, 751 (3d Cir. 2010) ("The FLSA provides that employers are required to pay overtime compensation to employees who work over forty hours per work week."). The NJWHL also requires the payment of overtime wages. *Thompson v. Real Estate Mortgage Network, Inc.*, 106 F.Supp.3d 486, 498-90 (D.N.J. 2015) (McNulty, J.).  Because Plaintiff and the FLSA Collective regularly worked more than 40 hours per week, and were not paid for overtime hours worked each week, defendants violated the overtime provisions of the FLSA.

**B.    The Purposes of the FLSA are Served by Granting Conditional Certification Here**

Plaintiff seeks conditional certification of this action pursuant to Section 216(b) of the FLSA, and Court-facilitated notice.  29 U.S.C. § 216(b).  The Supreme Court has held that trial courts have the authority to implement the collective suit provision of section 216(b) by "facilitating notice to potential plaintiffs."  *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989).  Furthermore, it is appropriate for trial courts to order defendants to produce to plaintiff the names and addresses of putative collective action members at the early stage of the litigation.  *Hoffman-LaRoche, Inc.*, 493 U.S. at 170 (affirming the district court's decision to permit discovery of putative collective action members for notice purposes without exploring alternative basis for the discovery).

Facilitating notice serves important goals, such as avoiding substantially identical suits and setting deadlines to expedite disposition of the action.  *Hoffman-LaRoche, Inc.*, 493 U.S. at 172; *Herring v. Hewitt Assocs., Inc.*, No. CIV. 06-267 (GEB), 2007 WL 2121693, at *3-4 (D.N.J. July 24, 2007) (noting collective action "provides for unified trial preparation, prosecution, and defense on what appears to be a single discriminatory decision").  Collective action treatment affords plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Morisky v. Pub. Sev. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 496 (D.N.J. 2000) (quoting *Hoffmann-La Roche, Inc.*, 493 U.S. at 170). The proposed FLSA Collective herein is the population the FLSA and NJWHL were designed to protect.

**C.    Plaintiff has a Minimal and Lenient Burden at This Stage**

In the Third Circuit, conditional certification only requires that the plaintiff make a "modest factual showing," beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other

employees. *Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, f.n. 4 (3d Cir. 2012). "The Second Circuit has described this initial step "as determin[ing] *whether* "similarly situated" plaintiffs do in fact exist," while at the second step, the District Court determines "whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.* at f.n. 4. "Relevant factors include (but are not limited to): whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Id.* at 536-37. The Court also noted that "the FLSA is a remedial statute that should be liberally construed" for the protection of employees' rights. *Id.* at 537.

In 2016, this Court set forth the standard   for determining whether employees are similarly situated for the purpose of conditional certification of an FLSA collective action. *Depalma v. The Scotts Co. LLC*, 2016 U.S. Dist. LEXIS 187529 (D.N.J. 2016) (McNulty, J.) The Court noted that at the first stage, a plaintiff is required to meet a fairly lenient standard of a modest factual showing. *Id.*, at *4. The plaintiff must produce some evidence beyond pure speculation, of a factual nexus between the manner in which the alleged policy affected her and the manner in which it affected other employees. *Id.*, at *4. Similarly situated means that members of a collective action are subjected to some common employer practice that if proved, would help demonstrate a violation of the FLSA. *Id.*, at *4

In support of the motion, plaintiff has provided her declaration and the declarations of Kevin McCourt, Yasmiin Arraya, and Jonell Jones, and exhibits. This material establishes that the proposed collective of underwriters (including junior underwriters) and closers/HUD reviewers/Closing Disclosure reviewers in New Jersey are similarly situated for the purpose of conditional certification.

Although REMN is a vast, nationwide organization, the proposed collective is limited to employees in New Jersey, where SAMC/REMN had and still has its executive office in Iselin. The two principal New Jersey locations are Edison (now Iselin) (Thompson Decl. at ¶ 45) and River Edge (now Hackensack) (McCourt Decl. at ¶ 3)**,** where individual defendants Noel Chapman and Samuel Lamparello, work or have worked.

Defendants do not dispute that during the relevant period, they did not pay overtime to members of the collective. Rather, their position is that the employees were not entitled to overtime pay because "they were exempt under the administrative and/or executive exemption." (See ECF No. 49, Def. Answer pg. 10, Eighth Affirmative Defense). Notwithstanding this position, defendants eventually thought otherwise and immediately after this case was filed, they began to pay overtime to members of the collective. Plaintiff has reason to believe that after this case was filed in 2011, defendants continued not to pay overtime in accordance with the FLSA and NJWHL.[10] In this regard, according to Kevin McCourt, who was employed as underwriter in the River Edge office until June 27, 2012, underwriters were not paid overtime at all until April 2011, after which time they were paid overtime only after they worked 55 hours in a week. (McCourt Decl. at ¶ 8). And, according to closer/HUD reviewer Yasmiin Arraya, closers were not paid overtime at all until April 2011, and when they began to receive overtime pay, it was not properly calculated because it failed to include productivity bonuses in the regular rate of pay as mandated by the FLSA and NJWHL. (Arraya Decl. at ¶ 23). *See* 29 C.F.R. 778.208 - 778.212.

All underwriters at SAMC/REMN who do the same job are similarly situated, and in this case, this is plain because as courts have noted nearly everything a mortgage underwriter does is

---

[10]   Defendants insist that once this case was filed they began to properly pay overtime.  This matter will be explored and addressed through further discovery.

dictated by federal agencies such as FHA, FNMA, and GNMA.[11] All underwriters utilize automated desktop underwriting programs required by the agencies. (Thompson Decl. at ¶ 21). The essential duties of an underwriter will also not vary based on location. Further, the work of an underwriter is essentially the same whether the mortgage application is submitted by a mortgage broker (wholesale) or directly from a borrower (retail). (Thompson Decl. at ¶ 23; McCourt Decl. at ¶ 5).

Like underwriters, the jobs of a closer, HUD reviewer, or closer/HUD reviewer are essentially the same. Closers and HUD reviewers are engaged in the final step of the mortgage loan process. HUD reviewers review the HUD-1 form (settlement statement) or its replacement form, the Closing Disclosure form, regardless of their office location. Closers and HUD reviewers follow the procedures mandated by the federal agencies and the employer. (Arraya Decl. at ¶ 2).

It is also plain that underwriters, closers/HUD reviewers/Closing Disclosure reviewers are similarly situated for the purpose of conditional certification. Here, they were all not paid overtime despite working more than 40 hours in a week. Their jobs are connected in an assembly-line process, and they work together and they regularly interact with each other. (Thompson Decl. at ¶ 29; Jones Decl. at ¶ 4; McCourt Decl. at 9). Underwriters and closers/HUD reviewers a) are employed in the same department – the Operations Department; b)

---

[11]   The FLSA exemption status of mortgage underwriters has been litigated with respect to the administrative exemption. FLSA, 29 U.S.C. § 213(a)(i). The job has been held to be non-exempt by the Second and Ninth Circuits. *See*, *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529 (2d. Cir 2009); *McKeen-Chaplin v. Provident Savings Bank*, 862 F.3d 847 (9th Cir. 2017), cert. denied, Case No. 17-731 (Nov. 27, 2017). A district court in the Eleventh Circuit has agreed with the *Davis* and *McKeen-Chaplin* precedent. *Watts v. Silverton Mortg. Specialists, Inc.*, 2019 U.S. Dist. LEXIS 78841 (N.D.Ga. 2019).  The Sixth Circuit, in a split decision, held the position to be exempt. *Lutz v. Huntington Bancshares, Inc.*, 815 F.3d 988 (6th Cir. 2016) (White, J., dissenting), cert. denied, 2016 U.S. LEXIS 4613 (2016). There is no factual basis to conclude that closers/HUD reviewers/Closing Disclosure reviewers are exempt. *See, e.g.*, *Elizabeth Relyea v. Carvan, Calahan and Ingham, L.L.P.*, 2006 U.S. Dist. LEXIS 63351 (E.D.N.Y. 2006) (cited with approval by *Davis v. J.P. Morgan Chase & C*o., 587 F.3d 529, at 536).  The employer bears the burden of proving that an exemption applies.  *Depalma v. The Scotts Co., LLC,* 2019 U.S. Dist. LEXIS 97036 at *10 (D.N.J. 2019)( McNulty, J.).

are paid by salary and productivity bonus; c) work at one of two principal locations in one state; d) are subject to the same employee policies and benefits contained in one employee handbook; e) and have been victims of the same policy of not being paid overtime.  Furthermore, defendants themselves have acknowledged by their own conduct that the putative collective is similarly situated.  Thus, once this case was filed, defendants acted quickly to insure that *all* members of the putative collective were paid overtime.

Collective actions regularly include more than one job title or location. For instance, in this Circuit, courts have conditionally certified a collective of certain employees including accountants, accounts payable processors, cash and collection employees in the State of New Jersey in the Operations Department who work in the 1) Accounts Receivable Group; 2) the Lease Administration Group; and 3) the Cash Applications Group. *Robles v. Vornado Realty Trust*, 2015 U.S. Dist. LEXIS 111038 (D.N.J. 2015). *See also, Keller v. T.D. Bank, N.A.*, 2014 U.S. Dist. LEXIS 155889 (E.D.Pa. 2014) (noting that certification will not be defeated because employees work at different locations). In *Andrienko v. United States Steel Corp.*, 788 F.Supp. 2d. 372 (W.D.Pa. 2011), the court not only granted conditional certification but also final certification of a collective of 1,250 employees, including employees who had different jobs, at different work stations, with different factual circumstances. *Id.*, at 378-79.

Likewise, in *Bland v. PNC Bank N.A.*, 2015 U.S. Dist. LEXIS 15979 (W.D.Pa. 2015), the court conditionally certified a collective of 2,300 Mortgage Loan Officers in locations nationwide. In *Moss v. Crawford & Co.*, 201 F.R.D. 398 (W.D.Pa. 2000), the court granted final certification to a collective that included different job titles and noted that "similarly situated" does not mean "identical," and that differences in job duties, geographic locations, and pay rates do not eliminate a collective claim for overtime wages. *Id.*, at *409, *411. *See also, Ritzer v.*

*UBS Financial Services, Inc.*, 2008 U.S. Dist. LEXIS 71635 (D.N.J. 2008) (granting conditional certification to technical employees at different levels who work at home, or in the New Jersey or Tennessee office).

There can be no question that the proposed class was subject to defendants' policy, under which defendants failed to pay the putative FLSA Collective overtime wages. Members of the proposed FLSA Collective are similarly situated and the Court should compel production of updated contact information for the collective class, authorize plaintiff to send notice via mail and email to all putative class members, and require defendants to post notice at its New Jersey locations where members of the collective are employed.

## II. THE FLSA STATUTE OF LIMITATIONS SHOULD BE TOLLED FOR THE PUTATIVE OPT-IN PLAINTIFFS BECAUSE NOTICE HAS BEEN DELAYED IN THIS ACTION

Plaintiff relies upon the arguments for equitable tolling set forth in her brief in support of her cross-motion for equitable tolling, dated October 22, 2018, ECF 224-1, and on the recent decision of this Court tolling the statute of limitations for the present opt-ins, ECF 235, dated June 26, 2019.  Plaintiff asks the Court to apply these same principles and conclusions to any future opt-ins.

## III. THE COURT SHOULD AUTHORIZE JUDICIAL NOTICE

### A.   **Judicial Notice is Warranted.**

The benefits to the judicial system of collective actions "depend upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-La Roche,* 493 U.S. at 170.  Accordingly, district courts are encouraged to become involved in the notice process early, to ensure "timely, accurate, and informative" notice and to help maintain control of the litigation.

*Id.* at 171-72.   Court authorization of notice also serves the "legitimate goal of avoiding multiplicity of duplicative suits." *Id.* at 172.   This case is appropriate for court-appointed notice.

The notice should be sent to all employees who worked in the covered job titles, namely, underwriters, junior underwriters, closers, HUD Reviewers, and Closing Disclosure Reviewers, who were employed by defendants at any time since July 30, 2009, which is three years before July 30, 2012, the date the Court selected as the statute of limitations tolling date in its June 26, 2019 Opinion (ECF 235).

It is standard procedure in FLSA collective actions to use a three year period which applies to willful violations for the purpose of determining which employees should receive notices.   *See, e.g., Depalma v. The Scotts Co., LLC,* 2016 U.S. Dist. LEXIS 187259 at *3, *9 (D.N.J. 2016) (McNulty, J.) (notice to be sent to employees employed three years before filing of complaint); *Colosimo v. Flagship Resort Dev. Corp.,* 2019 U.S. Dist. LEXIS 49830 at fn.1 (D.N.J. 2019) (same); *Ornelas v. Hooper Holmes, Inc.,* 2014 U.S. Dist. LEXIS 172903 at *12-*13 (D.N.J. 2014), *affirmed,* 2014 U.S. Dist. LEXIS 172162 (D.N.J. 2014) (same).[12]

### B.    Plaintiff's Proposed Notice is Accurate and Informative.

Judicially authorized notice of a collective action under § 216(b) must be "timely, accurate, and informative." *Hoffman-La Roche,* 493 U.S. at 172.   Plaintiff's proposed judicial notice will provide employees with an accurate description of this lawsuit, as well as their rights

---

[12]   At footnote 16 of its June 26, 2019 Opinion (ECF 235), the Court states "Plaintiff appears to concede, however, that the two-year statute of limitations applies…."   To the extent the Court gathered this, it was not plaintiff's intention to so concede and any such indication was inadvertent.   In this regard, the Amended Complaint specifically alleges that the FLSA violations here were willful and thus a three year statute of limitations applies.   See ECF 25 at paragraphs 35, 63, 71, 72, 75.   This position has not changed.   There is ample evidence of willfulness which will be presented at the appropriate times.   In this regard, however, the Court has already been presented with such evidence by defendants.   Thus, the defendants' general counsel submitted a declaration to the Court stating that defendants were prompted to pay underwriters overtime based on the Second Circuit's ruling in *Davis v. J.P. Morgan Chase & Co.,* 587 F.3d 529, 534 (2d Cir. 2009) , "which surprised the mortgage industry."   Yet, defendants willfully did not act on this ruling for some two years, when it determined that the right time had arrived – a week after the instant case was filed.   See Opinion (ECF 235) at p. 7; Schild Decl. par. 3 ( ECF 223-2).

under the Fair Labor Standards Act. (See notice, consent form and reminder notice, filed herewith).  As such, the proposed notice achieves the ultimate goal of providing employees with accurate and timely notice concerning the pendency of the collective action and should be adopted.

Plaintiff requests that the Court authorize notice in the form of: (1) mailing of the notice, by plaintiff's counsel, to all members of the putative collective; (2) emailing of the notice, by plaintiff's counsel, to all members of the putative collective at their last known personal and work email addresses; (3) posting of the notice, by defendants, in a conspicuous location in all break/lunch rooms or similar office space at their office locations in this matter typically utilized by the putative collective.  Plaintiff also requests that the Court authorize plaintiff's counsel to send reminder notices to those who have not returned a consent form half-way through the completion of the opt-in period, by mail and email.

Issuance of notice through these methods will ensure that all potential class members are reached as soon as possible. *See Gervasio v. Wawa, Inc.*, 2018 U.S. Dist. LEXIS 4899 at *18 (D.N.J. 2018) (authorizing notice in the manner requested herein), *Ornelas v. Hooper Holmes, Inc.,* 2014 U.S> Dist. LEXIS 172903 at *12-13 (D.N.J. 2014), affirmed 2014 U.S. Dist LEXIS 172162 (D.N.J. 2014) (same).  Plaintiff requests that the notice period be set for 60 days, and further requests that the Court authorize plaintiff to send a reminder notice to putative collective members 30 days after the issuance of the notice. [13]

---

[13]   Reminder notices are common.  See, e.g. *Gervasio v. Wawa,* 2018 U.S. Dist. LEXIS 4899 at *18 (D.N.J. 2018); *Pearsall-Dineen v. Freedom Mortg. Corp.,* 27 F. Supp. 3d 567, 575 (D.N.J. 2014); Talarico v. Public Partnerships, 2018 U.S. Dist LEXIS 140514 at *10 (E.D. Pa. 2018).

## IV. THE COURT SHOULD COMPEL DEFENDANTS TO PRODUCE THE NAMES AND CONTACT INFORMATION FOR ALL PUTATIVE MEMBERS OF THE COLLECTIVE

The Court should also order defendants to provide plaintiff with an up-to-date list of all putative collective members and their contact information. The identification of these individuals is critical for plaintiff to provide those individuals with notice of the action as contemplated by the FLSA. *See Hoffmann-La Roche*, 493 U.S. at 170 (affirming that the district court correctly permitted discovery of the names and addresses of the putative class). This is precisely the reason why the production of a list of potential class members is routinely disclosed in FLSA collective actions. Id. at 165.

Accordingly, plaintiff respectfully requests that, within ten business days of the Court's order, defendant be required to provide plaintiff's counsel with a list of all underwriters, junior underwriters, closers, HUD reviewers and Closing Disclosure reviewers who are, or were, employed by defendants at any time from three years prior to the tolling date of July 30, 2012 date until the present. This list should be in searchable Microsoft Excel format and should include each collective member's (1) name, (2) job title, (3) dates of employment, (4) address, (5) telephone number, (6) work and personal email address, (7) dates of employment, (8) location of employment, and (9) employee I.D. number. *See Gervasio* at *18 (ordering production of employee contact information requested herein); *Depalma v. Scotts Co*. LLC, 2016 U.S. Dist. LEXIS 187259 at *10 (D.N.J. 2016) (McNulty, J.) (ordering production of employee contact information requested herein).  To the extent any such information is unavailable after a diligent effort, defendants should be required to file with the Court a certification to this effect. *See DePalma* at *10.

## CONCLUSION

For all of the foregoing reasons, the Court should conditionally certify a collective class described herein. Furthermore, the Court should issue an order requiring defendants to produce the names and contact information for the proposed collective class to plaintiff's attorneys, and order issuance of Court-authorized notice to the conditional class members.  Finally, the Court should toll the statute of limitations for future opt-ins consistent with its prior ruling.

Dated: July 1, 2019

Respectfully submitted,

  *s/s Mitchell Schley*
Mitchell Schley
LAW OFFICES OF MITCHELL SCHLEY, LLC
197 Route 18, Suite 3000
East Brunswick, NJ 08816
732-325-0318
Fax: 732-325-0317
mschley@schleylaw.com

Judith Spanier
Julie Sullivan
ABBEY SPANIER, LLP
212 East 39th Street
New York, New York 10016
212-889-3700
Fax: 212-684-5191
jspanier@abbeyspanier.com
jsullivan@abbeyspanier.com

*Attorneys for plaintiff Patricia Thompson
individually and on behalf of all other persons
similarly situated*